THE STATE v. YOUNG, *Appellant.*

1. **Criminal Law**: DEFILEMENT OF FEMALE CONFIDED TO CARE. One who defiles a female under eighteen years of age who was a regular inmate of his family as an employed servant, and who promised her father to control her and treat her as a member of his family, is guilty of defilement as defined by Revised Statutes, 1879, section 1260.

2. ———: ———: EVIDENCE. In the prosecution of one for defilement of a female confided to his care, acts of intercourse occurring after the confidential relation has ceased, if so connected with the act in question as to show a continuation of the relation, are admissible in evidence.

3. ———: ———: ———. Evidence that defendant gave the female, alleged to have been defiled, money upon which to go away, she being pregnant, tends to show that he was the cause of her condition and is, with other circumstances, important and competent.

4. ———: PRACTICE: VENUE. Where there is no evidence tending to prove in what county the offense was committed, the judgment will be reversed.

*Appeal from Dent Circuit Court.*—HON. C. C. BLAND, Judge.

REVERSED AND REMANDED.

*L. B. Woodside,* with *L. Judson,* for appellant.

(1) The instructions given for the state were erroneous. (*a*) There is no venue laid in them. It was error to convict the defendant, unless the offense was committed in Dent county, which fact was disregarded in all of the state's instructions, and the record is silent as to where offense was committed. *State v. Inman,* 76 Mo. 548; *State v. McGrath,* 73 Mo. 181; *State v. Hughes,* 71 Mo. 633; *State v. Wheeler,* 79 Mo. 366; *State v. Hughes,* 82 Mo. 86. (*b*) The instructions given for the state fix upon the defendant the relation of guardianship without his consent. (*c*) The second instruction for the state is vicious, as it virtually tells the jury that a defendant on trial is not to be believed; and, while the instruction is in the language of the statute, it is error to present it to the jury in that form. (2) The court erred in refusing the instructions asked by defendant. The act charged was not an offense under section 1260, Revised Statutes, 1879, unless the defendant was guardian of Eliza, or stood in a similar relation, in which a peculiar and confidential trust was reposed. *State v. Arnold,* 55 Mo. 89. And while, since this decision was rendered, the section has been amended by inserting the clause, "while she remains in his care, custody or employment," this amendment does not change the relation the defendant must bear toward the female defiled, but only affects the time at which the defilement must take place, in order to make it an offense under this statute.

*John M. Wood,* Attorney General, for the State.

The amendment of the statute relating to this offense, following, as it did, the decision of this court, in the case of *State v. Arnold,* 55 Mo. 89, so as to make it an offense if the defilement occurred "while she

remained in his care, custody or employment," was presumably for the purpose of reaching cases of that kind, and which, it was then decided, were not embraced within the provisions of the statute. There could be no other sound reason for the amendment, as, under the old statute, it could not be questioned, that there was no offense committed, unless the defilement occurred whilst the female was under the care, custody or protection of the person committing the offense. It has been held by the supreme court of Kansas, under a statute very similar to ours, that, where a man took a girl to his house to work in his family, such girl is confided to his care and protection, and if he defile her in the meantime, by carnally knowing her, he is guilty of a violation of the statute. *State v. Jones*, 16 Kan. 608. See, also, *State v. Ruhl*, 8 Iowa, 447. Our statute is more general than either the Kansas or Iowa statutes.

BLACK, J.—Defendant was indicted under section 1260, Revised Statutes, 1879, for defiling Eliza A. Smith. He was convicted and his punishment assessed at a fine of one hundred dollars and imprisonment in the county jail for twenty-four hours.

The evidence shows that a sister of the defendant's wife engaged Eliza A. Smith in December, 1883, to go to defendant's house to do kitchen work. The defendant's wife was then sick, and Eliza remained in the employ of the defendant in the capacity of a kitchen girl from that date until January, or February, 1885. She was sixteen years old when she went to live at defendant's house. Mr. Smith, the father of the girl, testified that, a few weeks after she went to the defendant's house, he saw defendant and asked him how Eliza was getting along, and he said all right. He says : " I told him she was not strong, and I did not want her to work very hard; he said her work was light. About two or three weeks after this I spoke to him again and told him I wanted him to see that Eliza did not work

too hard, and that I did not want him to let her go out at night, except to church; he said all right, she would be treated just like one of the family."

The evidence of the girl is to the effect that defendant gave her some money and presents at different times, and flirted with her until May, 1884, without anything wrong being done. That one night in that month he put his arm around her, and they then had sexual intercourse, which act was repeated in about a week thereafter. After that they had like intercourse two or three times a week; sometimes in the dwelling house, sometimes in the hen house, and often out in a woods pasture. There is other evidence tending to corroborate her statements in some respects.

The defendant testified that he never had any intercourse with Eliza, that her father never spoke to him about her; that she was hired at his house to do kitchen work, and he never had, or assumed to have, any control over her. He denied the statements of Eliza, and says he never had the alleged conversations with her father.

The court, at the request of the state, instructed the jury as follows:

"1. The court instructs the jury that it is not necessary for the state to prove that defendant had the legal custody and control of the person of Eliza Smith, but if they find, from the evidence, that she was in his employ, and that her father committed her to defendant's especial care, with the expectation and understanding that defendant would use a supervisory control over her, and that, while she was so committed to defendant's care, and when she was under eighteen years of age, he debauched her by having carnal intercourse with her, they should find him guilty, and it makes no difference how readily or how often she consented to have sexual intercourse with the defendant."

And the court of its own motion told the jury "that the mere fact that Eliza Smith was employed by the

defendant as his hired servant, and that, while so employed, she was defiled by him does not authorize his conviction." But refused, at the request of the defendant, to say that to find defendant guilty it must appear "that the defendant was, at the time, her lawful guardian, or occupied a relation similar to a guardian to her, in which a peculiar and confidential trust was reposed."

The statute is in these words: "If any guardian of any female under the age of eighteen years, or any other person to whose care or protection any such female shall have been confided, shall defile her by carnally knowing her while [she remains in his care, custody or employment], he shall" be punished, etc. The words in brackets were first inserted by the Revised Statutes, 1879.

The chief complaints are, that there is no evidence to show that the defendant sustained the relation to the girl specified in the statute, and to the refusal of the court to give defendant's instruction. In the case of *State v. Arnold*, 55 Mo. 90, the evidence showed that defendant's sister-in-law, by the consent of her father, went to defendant's house to assist him in planting corn for one day, and, whilst thus assisting him, he had carnal knowledge of her. It was held that permission given by the father was not confiding her to his care and protection, that by "other person" the statute contemplated some one who should occupy a position similar to that of guardian, or stand in some attitude in which a peculiar or confidential trust was reposed. The court said: "The female was allowed to go and assist him in laboring for one day, but there is no evidence that she was specially confided to his protection and care, as designed by the statute." That case was decided in 1874, before the amendment above noted.

The Kansas statute is the same as that of this state before the amendment. In *State v. Jones*, 16 Kan. 608, the defendant took the female home with him, and, in

The State v. Young.

the absence of his wife, slept with her that night, and took her back next day. Says the court:—"We think that the trust reposed in the defendant by the father and mother of the girl, in confiding her to his care for the purpose that he might take her to his home, so that his wife could employ her as a hired girl in his own family, was such a trust as is fairly contemplated by the statute."

The case now before us is unlike the *Arnold case* in two particulars. This female was not employed for a day only, but she became a regular inmate of the defendant's family, and lived with him for over a year. In the next place, there is evidence tending to show that he promised the father of the girl to see that she did not go out at nights, and to treat her as a member of his family. If this evidence be true, he assumed towards her a relation akin to that of a natural guardian. The confidence reposed by the father in defendant, to see that the girl did not go out at nights, and to treat her as a member of his family, was of the highest order, and a care confided to him which brings him clearly within the statute, even before the amendment, and about which there can be no doubt since the amendment. The argument is made that the words, "while she remains in his care, custody or employment,"do not change the relation that the defendant must bear towards the female, but only fixes the *time* at which the defilement must take place. If no more than this had been intended, the legislature would probably have used the words "care or protection," but "employment" is added, showing this much, at least, that one occupying the position of an employed servant may be within the class of females for whose protection the statute is enacted.

It follows that the defendant has no ground to complain of the instructions given. The instruction asked by the defendant was properly refused. It is but an

abstraction, and does not attempt to define what would constitute a peculiar or confidential trust.

The prosecuting witness testified that she left defendant's house, and went to live with Mr. Sankey, in February, 1885, and that the sexual intercourse between her and the defendant continued, as often as once a week, until July; that about the twentieth of that month she met the defendant, by appointment, at the woods pasture, before mentioned, and he gave her eight dollars to go away on. She left the next day; her child was born on September 24, 1885.

If the evidence of acts of intercourse, after the witness left defendant's employ, tends to prove the particular offense with which the defendant stands charged, it is no valid objection to it that it tends to prove some other distinct offense. *State v. Greenwade*, 72 Mo. 298. There appears to be some contrariety of opinion as to the admission of evidence of subsequent illicit relations, but, if such evidence is so connected with the act in question as to show a continuation of the relation, it is admissible. Says Wharton: — "In prosecutions for adultery, or for illicit intercourse of any class, evidence is admissible of sexual acts, between the same parties, prior to, or, when indicating continuousness of illicit relations, even subsequent to the act specifically under trial." Wharton on Crim. Ev. [9 Ed.] sec. 35. No specific ground of objection to the evidence of the payment of the eight dollars to the witness is assigned in the brief for defendant, and we can see no valid objection to this evidence. She was pregnant, and if he gave her money to go away with, it is evidence tending to show that he was the cause of the mischief, and, with the other circumstances, is both important and competent evidence.

According to the indictment, the offense was committed in Dent county, and the point made, that there is no proof of the venue, is well taken. We find no

evidence tending to show in what county the offense was committed. No venue is laid, even in the instructions. For want of any proof, as to the county in which the crime was committed, the judgment must be, and is, reversed, and the cause remanded. All concur.