THE STATE v. STRATTMAN, *Appellant.*

1. Criminal Practice : CONTINUANCE. An application for a continuance should set forth the facts showing wherein the testimony of an absent witness is material.

2. Criminal Law : DEFILING A FEMALE WARD. Where under an indictment founded on Revised Statutes 1879, section 1260, against a guardian, etc., for defiling a female ward under eighteen years of age the latter testifies that the defendant always *forced* her but the circumstances show that the sexual intercourse was with her consent, a demurrer to the evidence is properly overruled.

3. ———: ———: INSTRUCTIONS. It is proper on such trial for the court to instruct the jury on behalf of the state that before they can acquit defendant because he has committed a higher crime they must believe that if he were on trial for such higher crime, it would be the duty of the jury to convict him, and such instruction is especially not objectionable where one has been given at defendant's request directing the jury to acquit if they find defendant accomplished his object by force and the prosecutrix only yielded to his superior strength.

4. ——— : ———. A conviction for defiling a female ward under said section 1260, Revised Statutes 1879, is proper, although the ward may have had sexual intercourse with other persons.

6. The Doctrine Announced in *State v. Young*, 99 Mo. 284, followed and approved.

*Appeal from Osage Circuit Court.*—HON. RUDOLPH
HIRZEL, Judge.

AFFIRMED.

*Silver & Brown* and *Ryors & Voshell* for appellant.

(1) The court erred in refusing the continuance as asked by defendant. This court having ruled in *State v. Dyke*, 96 Mo. 298, and like cases, that the state cannot deprive the defendant of his right to a continuance by consenting that he may read on the trial the matters set out in his affidavit for continuance as the testimony of the absent witnesses, it follows, we submit, that it becomes unnecessary to set out in the application the facts to which the absent witness would testify. (2) The court should have sustained the demurrer to the evidence. The prosecutrix testified expressly and emphatically that defendant always forced her. This made a case of rape and defendant could not legally be convicted under the indictment. *State v. Woolaver*, 77 Mo. 103. "A party may be estopped by giving a matter in evidence as well as by pleading it." *Speck v. Riggin*, 40 Mo. 405. The defendant was entitled to have the demurrer to the evidence sustained as asked by him—for the only evidence bearing on the alleged assault disclosed that defendant was guilty of rape. (3) Instruction number two for the state is erroneous. (*a*) It is not intelligible; it says : "Then it would be their duty to convict the defendant of such higher degree of crime, if they believe such evidence to be true." What does it mean ? (*b*) Said instruction is erroneous in not

telling the jury what higher degree of crime was meant and not defining what constituted such higher crime; the crime is not even named. The jury were left to grope mysteriously in the dark as to such higher crime; which was erroneous. *State v. Forsythe*, 89 Mo. 667. Under the instruction the jury were required to convict simply because they might believe the defendant could be cleared if tried for a higher crime. On a criminal trial a totally different and distinct offense should not be thrust into the case as was here done. One ejectment suit cannot be injected into the trial of another. *Atkinson v. Dixon*, 89 Mo. 464. (4) The state's instructions are also defective in not declaring the whole law applicable to the case. (*a*) The court did not define the meaning of the words wilfully and maliciously used in the indictment. (*b*) The court erred in failing to direct the jury that the carnal connection necessary to a conviction should have been performed on defendant's part without force. It is the duty of the court to give all necessary instructions whether asked to do so or not. *State v. Banks*, 73 Mo. 592; *State v. Palmer*, 88 Mo. 566. (5) The trial court erred in refusing to set aside the verdict for the reason that it was against the law and the evidence. *State v. Burgdorf*, 53 Mo. 65; *State v. Jaeger*, 66 Mo. 179; *State v. Priestly*, 74 Mo. 24; *State v. Hunt*, 91 Mo. 490.

*John M. Wood*, Attorney General, for the State.

(1) The indictment sufficiently charges the offense. *State v. Buster*, 90 Mo. 514. (2) The evidence warranted the verdict. *State v. Young*, 99 Mo. 284; *State v. Burgdorf*, 53 Mo. 65; *State v. Cook*, 58 Mo. 546; *State v. Connell*, 49 Mo. 282. While Mary Berhorst says in cross-examination that defendant forced her, her testimony as a whole does not disclose that there was "the utmost reluctance and the utmost resistance

on her part," which must have appeared before the defendant could have been convicted of rape. It is not shown that she was afraid of defendant or intimidated by his threats. (3) The court gave all the instructions asked, and fully and favorably declared the law for the defendant. (4) The application for a continuance did not conform to the requirements of the statute and was properly overruled. R. S. 1879, sec. 1884. (5) No exceptions having been saved to the reception or rejection of evidence, the action of the court below in this regard is not reviewable.

SHERWOOD, J.—At the April term, 1886, of the Osage circuit court, the defendant was indicted under the provisions of section 1260, Revised Statutes, 1879. The indictment is in proper form, and charges that defendant, on the fourth day of July, 1885, defiled one Mary Berhorst, a female under the age of eighteen years, who had been confided to the care and protection of defendant by her father; and that such criminal act was done while she was in the care, custody and employment of the defendant.

The defendant was tried at the April term, 1887, the trial resulting in a verdict of guilty, and an assessment of punishment at three months' imprisonment in the county jail, and one hundred dollars' fine. Before the trial began, the defendant filed the following application for a continuance:

"1. The said defendant cannot safely proceed to trial at this term of court, on account of the absence of a material witness, to-wit, one James Clinton. That said witness has been duly served with the process of this court long prior to this term of court. That said witness is not absent by the act, knowledge or consent, or connivance of this defendant. That the evidence of said witness is material to the defendant in the trial of this cause. That he cannot prove by any other witness the same facts that he expects to show by said

Clinton. That said Clinton lives within the reach of process of this court. That said defendant cannot safely proceed to trial without the evidence of said witness. That defendant verily believes that said witness can be had here at the next term of this court. The said witness was here at the last term of this court."

The transcript in this cause is prepared and indexed by *E. F. Bautzer*, circuit clerk, whose work is done so well in every particular as to leave nothing to be desired. If *all* transcripts in criminal causes were as well prepared as this one, our labors would be greatly lessened.

The testimony is the following:

Fred. Berhorst: "I have a daughter, Mary Berhorst; she was living with defendant during 1884 and 1885; she is now sixteen or seventeen years old; defendant came after her to take care of his children; the first time he came after her she would not go with him; the second time he came she went with him; defendant was to give her clothing, board and send her to school; she remained with defendant five or six years; I had no wife; the defendant married the sister of my wife; he said he would treat my daughter as his own child; he did treat her well; then sent her away from his home; she was nine or ten years old when she first went there; Mary went to Haltmeyer's not quite two years ago, and remained there two or three months; all live in Osage county."

Cross-examined: "Defendant came after my daughter to take care of his children; he had one or two children then; he agreed to give her clothing, board and send her to school, and treat her like his own child; he was to pay for the schooling."

Mary Berhorst: "I live with Conrad Avers; I know the defendant; have known him for five years; lived at his house about 1885; I was about ten years old when I went there; he said he would give me nice clothes, board me, send me to school and treat

me as a child; one day he said we would go out in the field to work, fix fence, I believe; he then told me such things; I told him I would not do such things; he took hold of me, threw me down and did it; defendant is the father of my child; the child is thirteen months old; I am sixteen or seventeen years old; this was in Osage county, Missouri; he said he would give me his farm if I would let him do it; I said I did not want his farm; he took hold of me and threw me down; I remained there seven months after that; he did not send me off; I left him; he gave me all my things; he did it a good many times."

Cross-examined : "The first time he did it was two years ago; I tried to keep him from it; he did it any way; he said he would kill me if I told any one; would kill me if I told his wife; I know V. Stewart; he was at Strattman's about that time; I know James Clinton and Thomas Scott; I never had anything to do with Clinton or Scott; Clinton was there as a hand about that time; a peddler was there about two years ago; he was at my bed at night; I told him to leave, and he left; I never had anything to do with any other person; every time defendant did it I tried to keep him from it; I always resisted when he wanted to do it; I did not want him to do it."

Q. "Did defendant force you every time he carnally knew you?

A. "Yes, I always resisted and tried to keep him from doing it, and then he would throw me down and do it any way; defendant had two children when I went there; think he has four now; there are two rooms in the house; I never said anything about it until I went to Haltmeyer's; defendant treated me bad toward the last; he got rough when he found I was with child; there were often men there; I often went in the field with them; defendant and his wife never said anything about it to me."

The State v. Strattman.

Defendant introduced evidence as follows :

V. Stewart: "I live in Osage county, Missouri; I know defendant and Mary Berhorst; I was working at defendant's during 1885; I know James Clinton and Thomas Scott; I do not know of Mary Berhorst having carnal connection with Scott, but I do know she had carnal connection with James Clinton; I saw it at Strattman's house at night before July 4, 1885."

Mrs. Strattman: "I am the wife of defendant; I know Mary Berhorst; one night my husband was absent; Mary Berhorst went to bed with my little child; she went in the room with the hand; I told her not to go, but she went; at night the child cried; I went to find out what was the matter, and when I opened the door I heard a man jump out of Mary Berhorst's bed; in the morning Mary Berhorst told me that the hand, James Clinton, had been in bed with her; I asked why he was there; she said nothing; he only slept on the pillow with her; the next morning she told me that the peddler had been in bed with her about an hour, then left and came back and got in bed with her again and slept on the pillow with her; I tried to keep her from going with the men."

Cross-examination : "My husband had nothing to do with her; I never saw anything out of the way with them."

Re-direct examination : "I always tried to keep my husband straight."

—— Donke: "Defendant treated Mary Berhorst as well as his own child; I was there a year and nine days while she was there; I never saw anything wrong between them; I worked in the field with them; never saw anything wrong."

Cross-examination: "He treated her as well as his own child; she lived there as one of the family; I was at Strattman's from September, 1883, and staid there one year and nine days."

Henry Strattman, defendant: "I never had anything to do with Mary Berhorst; I am not the father of her child."

At the close of the testimony for the state the defendant asked an instruction in the nature of a demurrer to the evidence, which was refused; but the court gave all the other instructions asked, whether for prosecution or defendant, as follows:

"The court instructs the jury that if they believe from the evidence that Mary Berhorst was confided to the care and protection of defendant, being then and there under eighteen years of age, and that the defendant, in Osage county, Missouri, at any time within three years next before the finding of the indictment, defiled the said Mary Berhorst by carnally knowing her and by having sexual intercourse with her, while she was in his care, custody and employment, and while she was still under the age of eighteen, they will find him guilty as charged in the indictment, and assess his punishment at imprisonment in the penitentiary not exceeding five years, or by imprisonment in the county jail not exceeding one year, and by a fine not exceeding one hundred dollars.

"2. The court instructs the jury that in considering the weight of the evidence given by both the defendant and his wife, they will take into consideration the fact that he is the defendant and she is his wife, and you may consider their interest in this case and the marital relations in passing on the credibility of their testimony.

"3. The court instructs the jury that before they can acquit because a higher degree of crime has been shown, they will have to believe from the evidence that if the defendant were on trial for a much higher degree of crime, then it would be their duty from such evidence to convict the defendant of such higher degree of crime if they believe such evidence to be true.

"4.  The court instructs the jury that although they may believe from the evidence that Mary Berhorst was seen in bed with Jim Clinton or any other person, yet this will not be sufficient reason for acquitting defendant, provided they further believe that defendant defiled her by having carnal knowledge of her while she was under his care and protection, and while she was still under eighteen years of age."

Defendant's instructions.    "1.  The burden of proving the guilt of the defendant rests on the state.    The defendant is presumed to be innocent, and before the jury can find the defendant guilty, they must believe from the evidence beyond a reasonable doubt that the defendant is guilty in the manner and form as charged in the indictment, and, if the state has failed by such evidence to remove such doubts, then the jury will find the defendant not guilty.

"2.  If, upon the whole case, the jury have a reasonable doubt as to the guilt of defendant, they will find a verdict of not guilty.   By reasonable doubt is meant a real, substantial doubt arising on careful consideration of all the facts and circumstances of the case, not a mere possibility of innocence.

"3.  If the jury believe that any witness has testified wilfully falsely to any material matter in issue in this case, then the jury should disregard such false testimony, and are at liberty to disregard the entire evidence of such witness in this case.

"4.  If the jury believe that at each one of the times of carnal connection testified to by Mary Berhorst, such connection was against her will, and was accomplished by force on the part of defendant, and that said Mary Berhorst resisted each attempt, and only yielded to the superior strength and force of defendant, then the jury will find defendant not guilty.

"5.  Evidence simply showing that the girl, Mary Berhorst, was the servant hired to take care of the children of defendant, and as wages therefor was to receive

her clothes and board and be sent to school,. is not sufficient evidence to show that said Mary Berhorst was a ward of defendant, or was under his special care and trust. The jury must further find from the evidence that Mary Berhorst at the time was under the special care of defendant and under his protection, and was confided or entrusted by her father to his care and protection.

"6. The court instructs the jury that even if the jury do believe from the evidence that the defendant had carnal connection with the said Mary Berhorst, yet said evidence alone is not sufficient to convict the defendant; the jury must believe from the evidence that the defendant defiled and corruptly debauched her while under his care and protection.

"7. The court instructs the jury that by the word ' defile' is meant having carnal connection with a woman previously chaste, or corrupting the chastity of a woman, or lewdly debauching a woman."

I. The application for a continuance was properly overruled; it disclosed no grounds why it should have been granted. In *what* respect the testimony of Clinton, the absent witness, was "*material*" was not stated. Such an allegation in an application of this sort is but the statement of a legal conclusion, and, for that reason, insufficient. In such cases, *facts* must be stated in order that the court to whom application is made may determine for itself whether the facts set forth warrant the granting of the order. *State v. Pagels*, 92 Mo. 300.

The contention is made that, because under the former rulings of this court an application for a continuance had to set forth the matters on which the applicant relied, in order that the state might consent to their being read as and for the testimony of the absent witness; and, as this can no longer be done, that, therefore, it is no longer necessary to set forth the facts on which the application is based, is simply a *non sequitur*. On the contrary, the necessity of setting forth the facts

showing prior diligence of the applicant, etc., etc., are just as necessary now as ever.

II. The next contention is made that the court should have sustained the demurrer to the evidence. It is true the prosecutrix swore point blank that the defendant always *forced* her, but that statement is to be received with many grains of allowance. This is a case where "*actions speak louder than words.*" In *State v. Woolaver*, 77 Mo. 103, where a defendant was also prosecuted under section 1260, and an instruction was given which told the jury to find the defendant guilty if he had carnal knowledge of the girl either with or without force, and it was held erroneous, but the judgment was, notwithstanding, affirmed, because the physical facts testified to by the girl herself showed beyond peradventure that the force required to constitute the sexual act *rape* had not been employed. In our opinion, the deductions from the evidence in the case at bar must be similar to those in that one. The testimony of the girl when contrasted with her actions; her failure to make complaint, although forced "a good many times," only furnishes one in the long list of instances of which that profound philosopher of human nature, Shakespeare, speaks:

> "The wiles and guiles that women work
> Dissembled with an outward show."

The demurrer to the evidence was, therefore, properly overruled.

III. There is no valid objection to the third instruction given at the request of the state, and there was no difficulty in understanding its meaning by a jury of ordinary intelligence and experience as to what was meant by the words "*higher degree of crime,*" and apart from that the fourth instruction, given on behalf of the defendant, explains any ambiguity there might have been in the words cited, by directing the jury to

acquit the defendant, if they should find that he accomplished his object by force, and the prosecutrix only yielded to his superior strength.

IV.   The fourth instruction given at the request of the state correctly told the jury that if the defendant defiled the prosecutrix by carnally knowing her while, etc., they should convict him, notwithstanding she may have also had sexual intercourse with another.

The section upon which the present indictment is grounded levels its denunciations and penalties against every one to whose care or protection any female under the age of eighteen years is confided, who violates the trust reposed in him in the manner that section condemns.   Unchaste to all the world beside, *she must be pure* to him.   This is the evident policy and central idea of the statute.

These remarks dispose of the seventh instruction given for the defendant.   That instruction was, for the reasons just stated, erroneous in favor of defendant; but he cannot take advantage of error committed at his own instance.   R. S. 1879, sec. 1821.

V.   In conclusion the testimony of the father of the girl fully makes out a case covered by the statute, and which brings it within the principles announced by this court in analogous circumstances in *State v. Young*, 99 Mo. 284.

We affirm the judgment. . All concur.