# THE STATE v. JOHN NIBARGER, Appellant.

### Division Two, February 17, 1914.

1. **DEFILING FEMALE:** Knowledge of Defendant's Wife. Although the testimony of the prosecutrix to the effect that her sister who was defendant's wife was fully advised of the illicit relations between her and defendant and made no objection seems almost incredible, yet the wife's knowledge was merely a single fact in the train of corroborative facts, and was not so far a material issue as to call for the application of the maxim, *falsus in uno, falsus in omnibus*; and if the fact of intercourse does not rest upon the testimony of prosecutrix alone, but is corroborated by other things, including defendant's extrajudicial statements, a demurrer to the evidence should not be sustained.

2. ————: Confidential Relation. Sec. 4479, R. S. 1909, includes not only guardians, but all others standing in a confidential relation towards the female, and where defendant, by agreement with prosecutrix's father, her mother being dead, took her, his wife's sister, to his house when she was fourteen years old to "take care of her and treat her as one of his own family" and she remained with him as a member of his household, assisting her sister in the housework and in the care of the children, during which time he deflowered her, the confidential relation existed.

3. ————: Unchaste Character. The unchaste character of the prosecutrix, in the prosecution of a man for defiling a female under the age of eighteen years, while in his confidential care, is no defense; although her bad character may be shown for the purpose of affecting her credibility as a witness.

4. **INCOMPETENT TESTIMONY:** No Objection. Error in admitting incompetent evidence to which no objection is made and no exception saved, cannot be reviewed on appeal—even though it be the unwarranted cross-examination of defendant's wife, in disregard of the statute which forbids her cross-examination from being extended beyond the bounds of her examination in chief.

5. **CONTINUANCE:** No Exception. The failure of defendant to save an exception to the action of the court in overruling his application for a continuance precludes any review on appeal of the court's ruling.

6. INSTRUCTION: Clerical Error: Omission of Word "Been" Before "Proved." The omission of the word "been" before the word "proved" in an instruction for the State, beginning, "The court instructs the jury that if verbal statements of the defendant have proved in this case," was clearly a clerical error, so patent that any twelve men sufficiently intelligent to qualify as jurors would automatically, on reading the instruction, supply the word, and therefore did not mislead them.

7. ———: Extrajudicial Statements by Defendant. An instruction telling the jury that "if any verbal statements of the defendant have been proved in this case, you may take them into consideration with all the other facts proved. What the proof may show you, if anything, that the defendant has said against himself, is presumed to be true, because against himself," etc., is not error, but approaches very nearly to a comment upon the evidence, and it is not necessary to give it at all, but if given it should require the extrajudicial statements to be considered altogether, since defendant is and ought to be entitled to the benefit of anything he may have said in favor of himself; and if the instruction is given, it should be given in the form found in State v. Howell, 117 Mo. l. c. 323.

Appeal from Livingston Circuit Court.—*Hon. Arch B. Davis*, Judge.

AFFIRMED.

*L. A. Martin* for appellant.

*John T. Barker*, Attorney-General, and *W. T. Rutherford*, Assistant Attorney-General, for the State.

At the April term, 1913, of the court, appellant applied for a continuance on account of the absence of material witnesses. The court overruled the application because two of the alleged absent witnesses, Jack Hodges and Floyd Baker, were present in court, and because the testimony of Joe Waltz and Cecelia Campbell, the other alleged absent witnesses, was merely cumulative. Regardless of whether the court erred in overruling the application for a continuance, that point cannot be considered on appeal because the bill of ex-

ceptions on file does not show that appellant saved an exception to the action of the court. State v. Murphy, 117 Mo. 14; State v. Stevenson, 93 Mo. 553; State v. Finley, 193 Mo. 202; State v. Penland, 199 Mo. 152. Instruction 5 told the jury that it was immaterial that prosecutrix had been carnally known by any man or men other than defendant, provided defendant had carnally known her while under his care, custody or employment. This instruction properly declared the law. State v. Strattman, 100 Mo. 548; State v. Rogers, 108 Mo. 204; State v. Sibley, 131 Mo. 532; State v. Summar, 143 Mo. 231. Instruction 6 related to the question of the care and custody of prosecutrix by defendant, and was a correct declaration of the law applicable to the facts in the case. State v. Young, 99 Mo. 284; State v. Strattman, 100 Mo. 540; State v. Skillman, 228 Mo. 434; State v. Terry, 106 Mo. 209; State v. Hesterly, 182 Mo. 26; State v. Oakes, 202 Mo. 86.

FARIS, J.—Defendant having been convicted in the Livingston Circuit Court of defiling one Nora Waltz, a female under the age of eighteen years, as denounced in section 4479, Revised Statutes 1909, and having had assessed against him as punishment therefor imprisonment in the penitentiary for a term of two years, has appealed.

The substantive facts, since no very serious attack is made upon the sufficiency of the evidence, are of no particular interest in this case; they add not at all to legal history, and therefore a recital in detail of their sordid and disgusting features would but cater to morbid taste without illuminating the points of law involved. Suffice it to say that the facts tend to show that defendant, a man aged about thirty-three years, by occupation a common laborer, alternating in his employment at manual labor upon farms and at sawmills, was married to a sister of Nora Waltz, the prosecut-

ing witness. The proof shows that the said Nora was born on the 29th day of October, 1897, and that the first act of intercourse occurred in the latter part of November, 1911, at a time manifestly, therefore, when she was under the age of eighteen years. The mother of said Nora was dead; her father had remarried, but had separated from the stepmother of prosecutrix; he seems to have been very poor and to have augmented the galling ills of his poverty by a sort of general shiftlessness. Touching the necessary testimony under the statute to prove that the prosecutrix was confided to the care of defendant, the proof is ample. The testimony of one Stella Waltz, a witness for the State, and a sister of prosecutrix, was to the effect that defendant asked the father of prosecutrix to let the latter go to live with defendant, and that prosecutrix's father thereupon said, " 'Well, we want to get her a home some place,' and Mr. Nibarger said he would take her and take care of her and treat her as one of his own family.'' In substance these same facts were testified to by two or three other witnesses in the case. Following this conversation between the father of prosecutrix and defendant, the girl Nora went, sometime in the early fall of 1911, to live with the defendant and remained with him as a member of his household, assisting her sister, the wife of the defendant, in the house work and in the care of defendant's three children, until sometime in December, 1912, when it became apparent that prosecutrix was pregnant, and her father came and took her away, and procured defendant's arrest. Following the first act of carnal access in November, 1911, the defendant continued at intervals, so prosecutrix says, to have intercourse with her until she left his house in December, 1912. The proof also shows that he communicated to his brother, Ed Nibarger, at least the fact of prosecutrix' easy virtue and that as a result Ed Nibarger also had intercourse with prosecutrix. The prosecutrix herself,

when a witness upon the stand, admitted two acts of intercourse with Ed Nibarger between the date of her becoming an inmate of defendant's house and the date of her leaving there.

Some effort was made by defendant to show the bad character of prosecutrix for chastity. We need not go into the details of this attempted proof for the reason that the acts sought to be proved did not go as far toward showing unchastity as the frank admission of prosecutrix herself. The acts sought to be proven by defendant related to alleged indiscretions with the said Ed Nibarger; but prosecutrix herself having ingenuously admitted intercourse with him it was therefore all before the jury. Besides, the alleged beginning of her unchastity was subsequent to the date at which she avers she was deflowered by defendant.

In the course of the trial, one Mark White, who was the sheriff of Livingston county at the time of defendant's arrest, was called by the State to prove certain extrajudicial statements of defendant in the nature of confessions, but falling short of formal confessions. This witness testified that defendant told him that he had had intercourse with prosecutrix about April or May, 1912, and further said to him that his brother Ed Nibarger had also had intercourse with her. Bottomed upon this statement, which was the only extrajudicial statement of defendant shown in the case, the court gave this instruction:

"The court instructs the jury that if verbal statements of the defendant have proved [sic] in this case, you may take them into consideration with all the other facts and circumstances proved. What the proof may show you, if anything, that the defendant had said against himself, is presumed to be true, because against himself, but anything you may believe from the evidence the defendant said in his own behalf, you are not obliged to believe, but you may treat the same as true or false, just as you believe it true or false,

when considered with a view to all the facts and circumstances in the case."

Should further facts be required in order to elucidate the subjoined discussion of the legal points in the below opinion, we will set them out there.

## OPINION.

We have not been furnished any brief of any sort by defendant's learned counsel in this case; a fact attributable, it may be, to the poverty of defendant, since he was permitted by the court below to prosecute his appeal *in forma pauperis*. Learned counsel for defendant argued this case before us *ore tenus* and expressed the hope that he would be able to furnish us with a brief, but none has been filed, and as in duty bound, we have ourselves examined with much care the record herein as well as the assignment of errors contained in the motion for a new trial.

I. We find that complaint is there made that the evidence in the case is insufficient and therefore that his demurrer to the evidence produced by the State should have been sustained. With this argument we are utterly unable to agree. The evidence is overwhelming on every point required by law to be proven. If the jury believed this evidence, and the weight of it was for them and not for us, but one result was possible; that result, the conviction of defendant, the jury reached. We are not saying that there are not to be drawn from some of the facts and circumstances in this case suspicious inferences. Some of the facts testified to by the prosecutrix are almost incredible, in that they are opposed to the usual and ordinary human experience. For example, prosecutrix swore that her sister was at all times fully advised of the relations existing between prosecutrix and the defendant, who was the husband of said sister, and that this wife and sister did not raise hand or voice to put an

*Carnal Knowledge: Sufficiency of Evidence.*

end to these meretricious actions. Unquestionably this is not the usual behavior of a wife or a sister; but even if this statement touching the wife's knowledge be false, and the jury were the judges of it, there is yet enough in the record to amply sustain this conviction. The more so, since the whole case as to the intercourse charged and necessary to be proven to sustain a conviction, does not rest upon the testimony of prosecutrix alone. Besides, the wife's knowledge, or lack of knowledge, was merely a single fact in a train of corroborative facts, and not so far a material issue as to call for the application of the maxim, *falsus in uno, falsus in omnibus.* There is ample corroboration in proof of sexual access arising from the extrajudicial statements of defendant himself.

Section 4479 of our statutes includes not only guardians, but all others standing in a confidential relation toward the female defiled. This is

Confidential Relation.

so well settled that we need only refer to the cases wherein the point is discussed. [State v. Oakes, 202 Mo. 86; State v. Hesterly, 182 Mo. 16; State v. Summar, 143 Mo. 220; State v. Hill, 134 Mo. 663; State v. Sibley, 131 Mo. 519.] Of course we do not desire to be understood by the use of the words "confidential relation" to go further than the adjudicated cases have gone in this state; at least until a case shall appear making the point a live one. We do say, however, that upon the facts here defendant was brought by the proof within the purview of the crime denounced by the above section.

Neither is the unchaste character of the female any defense; if so it be that the point made by defendant includes this question. This also has been settled against defendant's contention. [State

Unchaste Character of Prosecutrix.

v. Summar, supra; State v. Sibley, supra; State v. Strattman, 100 Mo. 540; State v. McClain, 137 Mo. 307.] This distinction which leaves out of consideration the prior chastity

and prior good repute as to virtue of the prosecuting witness arose no doubt from the fact that the statute in question uses the word "defile" in defining this offense rather than the word "seduce," which latter word has been said to mean "to lead astray from the path of virtue." We are not saying that the bad character of the prosecuting witness in a case of this sort may not be shown for the purpose of affecting her credibility as a witness. This may be done. [State v. Terry, 106 Mo. 209; State v. Young, 99 Mo. 284; State v. Summar, supra; State v. Sibley, supra.] The rule in the matter of reputation for chastity of prosecutrix is succinctly stated in State v. Sibley, 131 Mo. 1. c. 532, thus:

"Evidence of acts of illicit intercourse by Lula Hawkins with persons other than defendant was inadmissible. Specific acts of unchastity were not permissible for the purpose of affecting her credibility or for impeaching her, and whatever acts of lewdness she may have been guilty of with others, if any, were no justification or excuse for defendant in having carnal connection with her, if in fact he did have, while she was under his care, control and protection. As was said in State v. Strattman, 100 Mo. 540, 'unchaste to all the world beside, *she must be pure* to him.' "

We must therefore rule this point against defendant.

II. Complaint is also urged in the motion for a new trial that the court admitted irrelevant and incompetent testimony on the part of the State. We have carefully combed the record to find if this be true. The only instances we find of such admission of incompetent testimony occurred in permitting the witness Stella Waltz to testify touching statements she said were made to her by defendant's wife indicating a knowledge of defendant's carnal intercourse with prosecutrix, and the unwarranted cross-examination of the wife on the

Incomptetent Evidence.

same matter. This was utterly and absolutely inadmissible on account of the plain statutory provision which forbids the cross-examination of the wife of a defendant, who testifies for him, from being extended beyond the bounds of her examination in chief. [Sec. 5242, R. S. 1909.] However, since neither an objection was made by defendant nor any exceptions taken, nor any reference made anywhere in anywise by defendant to the action of the court in this behalf, we cannot review it.

III. Defendant filed prior to the trial an application for a continuance, which was overruled by the court. He urges this as error, but the same difficulty exists here as we find touching the point last above discussed. Neither the application for a continuance nor any exceptions of the defendant to the court's action thereon is shown in the bill of exceptions. We do not think that under the facts the action of the court was erroneous in overruling this application for a continuance. We gather from the whole record and from all of the facts and circumstances that his action in that behalf was perhaps proper and correct. But be this as it may, the failure of the defendant to save his exceptions to the action of the court in overruling his application for a continuance precludes our ruling upon the point. On this we need not burden the books with citations.

IV. Alleged errors are predicated upon the act of the court *nisi* in refusing to give certain instructions asked, as it is averred, by defendant. The record shows that the court gave all of the instructions which defendant requested him to give. Defendant, so far as the record shows, asked the giving of but four instructions. All these the court gave. Most of them were uselessly and unnecessarily given, for that he had already *sua sponte* instructed the jury fully on all of the points embraced in the four instruc-

*Instructions.*

tions asked by and given for defendant. If other in-
structions were asked by defendant the record does
not show it; none of them is preserved in the record
before us.

To the further point made by defendant that the
court did not instruct on all of the law applicable to
the case, we may say that we have carefully gone over
the instruction given by the court, and so far as we are
able to see, in the absence of specific light thrown upon
them by further and more definite suggestions from
defendant, we are unable to see wherein they do not
cover every point that ought to have been covered and
every point required by law to be covered, in such a
case as this. With the exception of instruction num-
ber 7, which we have set out in the statement, and touch-
ing which we shall make some further observations
below, so far as we are able to see, all the instructions
given by the court were well enough, and we must dis-
allow all points made by defendant upon these instruc-
tions.

The peculiar form of instruction number 7, quoted
in full in the statement herein, would seem to require
some further and more detailed discussion. Manifest-
ly the first sentence thereof contains a clerical error,
in that the word "been" is omitted between the words
"have" and "proved." We set this instruction out
*verbatim* so that this error, as well as the obvious man-
ner in which the same should be corrected, may be
clearly seen. So far as this mistake, which is patent,
and which is clearly that of the scrivener, is concerned,
we do not think the jury could have been misled by it,
or that it is of sufficient moment to cause a reversal
of this case. We can not believe that any twelve men,
with sufficient intelligence to qualify as jurors, can read
this instruction without seeing instantly that an omis-
sion of the word "been" has occurred therein and
without automatically supplying it as they read. We
think then we are warranted in disregarding so patent

a clerical mistake and in treating the instruction as if it read in the first lines thereof: "The court instructs the jury that if verbal statements of the defendant have been proved in this case you may take them into consideration with all the other facts and circumstances proved." Having thus in a sense reformed this instruction along what we deem to be intelligent and common sense lines, we may say that while it is not in our view in the best and most approved form, it has yet been held good many times. We have found in our own Missouri cases that exact copies of this instruction have been under fire and been sustained as sufficient. In State v. Tobie, 141 Mo. l. c. 561, an exact copy of this instruction was given. This court held it a correct and proper instruction. Other cases have discussed this identical instruction and held it good (State v. Darrah, 152 Mo. l. c. 541); and even in the fairly ancient case of State v. Sattley, 131 Mo. l. c. 490, this court, in referring to an instruction apparently precisely like the one here under discussion, said: "Instruction numbered 7 has been approved so often in this State that we must decline to enter upon its defense. [State v. Carlisle, 57 Mo. 102; State v. Brown, 104 Mo. 365; State v. Wisdom, 119 Mo. 539.]"

It is true that in the Sattley case it does not clearly appear that the instruction there attacked and there by the court held good, was similar to the one here under discussion in the instant case; but by a reference to the case of State v. Darrah, 152 Mo. l. c. 541, it will be seen that the instructions in the Sattley case, the Darrah case and the Tobie case, all supra, and the instant case, were copies of each other. The fact remains however that in the last analysis an instruction of this sort approaches very nearly to a comment upon the evidence, and while such a comment has never, so far as we are able to find, been held to be reversible error, or even error calling for rebuke, we are disposed to think, if an instruction of this sort is to

be given, it should, in fairness to the defendant, require that any extrajudicial statements made by defendant after the commission of the offense for which he is upon trial, should be considered by the jury altogether, since defendant is and ought to be entitled to the benefit of anything he may have said in such statements in favor of himself. It is the experience of men that casual admissions of parties to an action, or extrajudicial statements falling short of a formal written confession of a defendant and made at varying periods, prior to the trial, are so likely to be misunderstood by the hearer, or to be restated without regard to their setting, and without regard to qualifying statements or circumstances, and without regard to their context, that the well-known frailty of human memory renders them dangerous and in many cases useless.

The fullest and fairest instruction that we have been able to find on this point, if the jury are to be instructed at all thereon, is to be found, among other places, in the case of State v. Howell, 117 Mo. 1. c. 323. The feature of requiring in fairness to the defendant that such statements shall be considered altogether, is to be found in practically all of the instructions which have been approved by this court upon this point. [State v. Turner, 110 Mo. 196; State v. Cushenberry, 157 Mo. 1. c. 188; State v. McKenzie, 144 Mo. 1. c. 44; State v. Hays, 23 Mo. 1. c. 319; State v. Peak, 85 Mo. 190; State v. Duestrow, 137 Mo. 44; State v. Wilson, 223 Mo. 1. c. 192.] On the authority, however, of the many well considered cases holding this identical instruction good, and which cases we see no reason to overrule, we must disallow this point to defendant, trusting, however, that the courts *nisi* may hereafter see fit, when they feel in duty bound to instruct on this point, to follow substantially the form set out in the case of State v. Howell, supra.

Having therefore with great care gone over the entire record, and finding no error sufficient to justify us in reversing this case, we are constrained to say that defendant has been accorded a fair and painstaking trial by the learned judge *nisi.* Particularly was the trial court lenient in permitting defendant's counsel to offer in many cases evidence which might properly have been excluded. It results that the judgment should be affirmed. It is so ordered. *Walker, P. J.,* and *Brown, J.,* concur.