THE STATE v. ROBERT MCGUIRE, Appellant.—39 S. W. (2d) 523.

Division Two, June 5, 1931.

*Barton & Moberly* for appellant.

*Stratton Shartel,* Attorney-General, and *Albert Miller,* Assistant Attorney-General, for respondent.

COOLEY, C.—Appeal by defendant Robert McGuire from the judgment of the Circuit Court of Texas County, sentencing him to

two and a half years' imprisonment in the penitentiary upon conviction of larceny of chickens in the nighttime.

Independently of a verbal admission or confession of defendant, the State's evidence tended to show the following: Trav Johnson, owner of the stolen chickens, and the defendant lived in the country near each other (defendant's evidence indicates a quarter or half a mile apart). On Friday morning, August 18, 1929, Johnson and his family went to a reunion, returning to their home Saturday night, August 19, about midnight. A week or so previously Johnson and his wife had counted their chickens, finding 114. They counted them on Sunday, August 20, and discovered that about fourteen were missing. On August 22 they found and identified eight of the missing chickens in the possession of•Delbert Nelson, a merchant at the town of Twin Hickory, some miles distant. Johnson took those chickens home where "they went right to roost with the other chickens." Nelson had purchased said eight chickens from defendant McGuire on Saturday morning, August 19. Johnson's chickens, including these eight, had all been raised by him on his farm and roosted in a brooder house not over ten steps from his dwelling and inside the yard which was enclosed, the dwelling house and brooder or hen house being within the same enclosure.

Defendant was arrested on charge of having stolen the chickens a day or so after Johnson missed them, and before the latter had discovered and identified them at Nelson's store. He was taken before Ray Huss, a justice of the peace, where, in answer to questions of Huss, he admitted that he had stolen the chickens, stating that he had taken them "Friday night" between eight and ten o'clock and had sold them at Twin Hickory the next morning. He said he thought there were seven, but there might have been eight. When arrested defendant had denied having stolen the chickens. The value of the eight chickens was about four dollars.

Defendant did not testify, but called his wife and another witness who testified that defendant was at his home constantly from about four P. M. Friday until Saturday morning. His wife further testified that he did not bring home the chickens in question or any chickens.

I. Appellant contends that the *corpus delicti* was not sufficiently proved, there being no proof aside from his alleged confession that the chickens were stolen in the nighttime; that the time, i. e., nighttime, is an essential element of the crime charged and "the naked confession of the defendant is not sufficient to establish the commission of a crime *in toto* or any essential element thereof."

It is true that "confessions of a crime not made in open court or before a committing magistrate and without proof *aliunde,* that

a crime has been committed, will not sustain a conviction." [State v. Mullinix, 301 Mo. 385, 391, 257 S. W. 121, and cases cited.] But, as further stated in the Mullinix case in that connection, full proof of the body of the crime, independent of the confession, is not required "but on the contrary, what may seem to be slight corroborating facts have been held sufficient." [Citing cases.] The rule that full proof of the *corpus delicti*, independent of the confession, is not required seems well established, not only in this but in other jurisdictions. It is thus stated, with citation of numerous cases from this and other states, in State v. Cantrell (Mo.), 6 S. W. (2d) 839, 841, quoting from State v. Skibiski, 245 Mo. 459, 463, 150 S. W. 1038:

"The rule in this State has long been that full proof of the *corpus delicti*, independent of the confession, is not required. If there is evidence of corroborating circumstances which tend to prove the *corpus delicti* and correspond with the circumstances related in the confession, both the circumstances and the confession may be considered in determining whether the *corpus delicti* is sufficiently proved in a given case."

The Cantrell case was a prosecution for larceny of chickens in the nighttime, and as to proof that the larceny was committed in the nighttime presented a situation quite similar to that in the instant case. In other respects the State's case was rather less strong than this one. Applying the above quoted rule it was held that the proof of the *corpus delicti* was sufficient to make the confession admissible "and that it was for the jury to say whether the corroborating facts and the confessions, considered together, excluded from their minds all reasonable doubt of appellant's guilt, considering also his denial of the charge, his repudiation of the confession, and the evidence in his behalf tending to show an alibi."

In this case there was ample evidence without the confession to authorize a finding that the chickens had been stolen and that defendant was in possession of and sold them to Nelson very shortly thereafter. The Johnsons had not been away from home since last counting their chickens prior to August 18 until they left for the reunion. It is not likely the theft occurred in the daytime while they were at home. Since defendant marketed the chickens it may be inferred that he stole them for that purpose and would naturally dispose of them as soon as possible, especially as he lived near the owner's home. He sold them to Nelson at Twin Hickory on Saturday, which fact corroborates part of his statement. He said, too, that he took them from Trav Johnson and he thought there were seven, but there might have been eight. Nelson testified he bought eight from defendant, and it was shown that those eight were Johnson's chickens. Defendant's wife testified that when defendant

came home about four P. M. Friday he brought no chickens. If he had stolen them earlier in the day would he not likely have disposed of them during that day?

If the charge were simple larceny it is conceded there was ample proof of the *corpus delicti* without the confession. Stealing chickens in the nighttime is larceny. The time at which the offense is committed affects the grade of the offense and the punishment therefor, but we are not prepared to say that it is such an ingredient of the offense as that there must be proof, independent of a confession, tending to show the nighttime feature, on the theory that it is part of the *corpus delicti*, before the confession can be considered.

In State v. Flowers, 311 Mo. 510, 278 S. W. 1040, the charge was larceny from a dwelling house. As we understand the brief statement in the opinion of the evidence in the case the only proof that the property was stolen from a dwelling house was a statement or confession proved to have been made by the defendant. There was evidence, as in this case, of the defendant's possession of the stolen property recently after its theft. It was held that the *corpus delicti* was sufficiently shown.

However, if it be conceded that some corroborating circumstances must be shown, we think, as was held in the Cantrell case, that applying the rule there stated there were in this case, as in that, enough corroborating circumstances shown to admit the confession and to authorize its consideration by the jury together with all other facts in evidence; and that so considered the evidence is sufficient to support the verdict.

II. In his brief here appellant charges error in the admission of the evidence of his confession on the ground that it was made in response to an implied promise of mitigation of punishment, and therefore not voluntary. The facts relative to the admission of that evidence are: Otto Scott, who was with constable Earl Day when the latter arrested defendant and took him before Ray Huss, justice of the peace, testified for the State, without objection, that defendant first said he had not taken the chickens; that Huss said "All we want is the truth and nothing but the truth," whereupon defendant said he would tell the truth and proceeded to state that he got the chickens from Trav Johnson between eight and ten o'clock at night and sold them at Twin Hickory. At that point defendant's counsel asked to interrogate the witness, and developed that Huss was the justice who had issued the warrant and before whom the case was pending and that according to the witness, when Huss said all he wanted

was the truth he also said to defendant that it might make it easier on him if he would tell the truth and nothing but the truth. Defendant's counsel then stated: "We object to that as being an improper method of obtaining the confession." The objection was overruled, but the testimony had already been given and there was no motion to strike it out.

Earl Day was called and after some preliminary questions was asked to state the conversation that occurred at that time, whereupon defendant objected "to the introduction of any further statements as to what occurred in that conversation for the reason that the evidence shows that it was given in obedience to a question propounded by one in authority." The objection was overruled. Day testified that defendant said he got the eight chickens from Trav Johnson between eight and ten o'clock Friday night and sold them at Twin Hickory the following day, Saturday.

Huss was called and testified without objection to substantially the same statements of defendant, his testimony differing in this respect, viz., he quoted defendant as saying he sold the chickens Saturday *morning*, gave defendant's statements more in detail, giving questions and answers, and testified that it was Scott, not he, who said to defendant that it would be easier on him if he told the truth. There was no motion to strike out any of the foregoing testimony.

It will be noted that the objection made by defendant in the trial court was upon the ground that the statement of defendant was in "obedience (response?) to a question propounded by one in authority." There was no objection upon the ground now urged, that it was made in the hope, induced by what had been said to him, that he might be more leniently dealt with if he confessed. The objection was not sustainable upon the ground stated, and the trial court cannot therefore be charged with error in overruling it. ". . . It does not matter that the confession was elicited through questions of the officer or person in authority, and that such questions assumed the guilt of the defendant." [State v. Hart, 292 Mo. 74, 89, 237 S. W. 473 and cases cited.] Neither is the confession rendered inadmissible because the defendant was under arrest (State v. Hart, supra), nor merely because he was exhorted or adjured to speak the truth, no threats or promises being made. [State v. Johnson, 316 Mo. 86, 92, 289 S. W. 847.]

If defendant had made timely objection at the trial upon the ground he now urges, or made any showing that his confession was induced by the statement made by or in the presence of the officers having him in charge, we might have a different question with which to deal. [State v. Hart, supra; State v. Keller, 263 Mo. 539, 557-8, 174 S. W. 67.] He did neither. His objection was

not on that ground, and he did not offer to testify himself to the court upon that issue when he challenged the State's offer to prove the confession, or to the jury, nor did he attempt in any way to show that his confession had not been voluntary.

"It is well settled that objections must be specific and call the attention of the court directly to the ground upon which the objection is made, and it is also well settled that appellant will not be permitted to broaden the scope of his objection on appeal beyond that made in the trial court." [State v. Witherspoon, 231 Mo. 706, 720, 133 S. W. 323.] See also State v. Harlan (Mo.), 240 S. W. 197, 201; State v. Vanarsdall (Mo.), 273 S. W. 733, 735.

For the reasons indicated we deem it unnecessary to decide whether or not under the circumstances shown the statement to defendant that it might make it easier on him to tell the truth, nothing else appearing, would be sufficient to exclude the confession had objection been made on the ground now suggested.

III. Defendant recalled Huss and sought to ask him if he had informed defendant that he was entitled to consult counsel and that what he said might be used against him. The State's objections to the questions were sustained. No offer of proof was made. That ruling could not have prejudiced defendant. If defendant was not given the information suggested by the questions that fact would not have made the confession inadmissible. [State v. Johnson, supra.] If defendant sought to prove that he had not been so informed in order that the jury might consider that fact it was clearly apparent from Huss's testimony that he had not so informed defendant.

IV. Complaint is made that the court should have submitted petit larceny. Defendant asked and the court refused an instruction to the effect that if the jury found that defendant stole the chickens, . but had a reasonable doubt as to whether the larceny had been committed in the nighttime or the daytime, or as to whether it was committed "in or out" of the messuage of Johnson, defendant could be convicted only of petit larceny.

In a case under this statute, Section 4066, Revised Statutes 1929, if the evidence warrants, i. e., if the larceny is proved, but the value of the property stolen is under thirty dollars, and under the evidence there could be a finding that the larceny was not committed in the nighttime or was not from the messuage of the owner, we think an instruction authorizing a verdict of petit larceny should be given. An indictment charging an offense under this statute includes all the elements of petit larceny. But we do not think the refusal of the court to submit petit larceny prejudiced the defendant, because: If the larceny was committed in the nighttime

it could not have been found under the evidence to have been committed elsewhere than from the messuage of Mr. Johnson. The jury was required to find, in order to convict, that the larceny was from the messuage and in the nighttime. Appellant's real contention on this point is that it was not proved that the larceny was committed in the nighttime. In his brief here he states: "It was the theory of the defense that the chickens were stolen in the daytime, if at all by this defendant."

At defendant's request the court instructed the jury that although they should find that defendant stole the chickens, "yet under the law and evidence in this case" they could not convict defendant of any crime whatever unless satisfied from the evidence beyond a reasonable doubt that the larceny was committed in the nighttime. That instruction was more favorable to defendant than the one refused, since it authorized acquittal instead of conviction of petit larceny if the jury had a reasonable doubt that the larceny was committed in the nighttime. If it be contended that the jury might have convicted of petit larceny and assessed a lower punishment if that offense had been submitted, a sufficient answer is that under the statute in question, though the conviction be for stealing from the messuage in the nighttime as charged, the punishment may be as low as it could be for petit larceny. So from whatever angle the matter be viewed the court's refusal to submit petit larceny was not prejudicial to the defendant.

V. Appellant alleges error in the giving of instruction No. 3 relative to the effect of verbal statements, if any, found to have been made by defendants. It is substantially a copy of Instruction No. 16 given and approved in State v. Darrah, 152 Mo. 522, 530, 541, 54 S. W. 226, with the additional direction that such verbal statement should be considered by the jury with caution on account of the liability of witnesses to forget or misunderstand what was really said or intended. The additional cautionary direction was favorable to the defendant. The balance of the instruction in substantially the same form has been many times approved by this court. [See State v. Nibarger, 255 Mo. 289, 298-9, 164 S. W. 453.] While it is usually unnecessary and has been criticized as a near approach to an unauthorized comment on the evidence (see State v. Nibarger, supra) we have never held it reversible error. The further objection that it did not require that the jury should find the statements, if any, to have been made voluntarily is answered by State v. Simenson, 263 Mo. 264, 268, 172 S. W. 601, holding that it is unnecessary to incorporate that proposition in the instruction under discussion under circumstances such as shown here. [See also State v. Nibarger, supra; State v.

Darrah, supra; State v. Wilson, 223 Mo. 173, 192, 122 S. W. 671.]
The point is ruled against appellant.

VI. In presenting their case in chief counsel for the State
neglected to introduce any direct or positive evidence as to where
Johnson's chickens roosted at night. There were some circumstances
shown from which it might be inferred that they
roosted in the brooder house, but the evidence on
that point was far from satisfactory. After both sides had rested
and a demurrer had been presented the court permitted the case
to be reopened and proof on that point to be offered. Johnson was
then recalled and asked: "Where do your chickens roost of a
night?" To which he replied that they roosted in the brooder
house, and proceeded to describe, in answer to questions, its loca-
tion, structure, etc.

There is some contention that the court erred in permitting the
reopening of the case, but such matters rest largely in the discretion
of the court, and we do not perceive that defendant could have been
prejudiced by such reopening of the case. It does not appear that
any witnesses had been excused and there was no suggestion by
defendant of any fact or circumstance from which it might appear
that he might be injured more than if that evidence had been offered
at the proper time.

The main insistence, however, is that the questions put to Johnson
when he was recalled were in the present tense and that his testi-
mony as to where the chickens roosted had reference to the time
of the trial and not to the time of the larceny, some six months
previous. Counsel for the State might well have exercised more
care in the presentation of their case, thereby saving this court time
and labor in passing upon such contentions as this. But we are not
authorized to reverse for technical errors that do not affect a de-
fendant's substantial rights on the merits. We are confident the
jury and defendant as well perfectly understood from the whole
examination that the witness was describing conditions as they
existed at the time of the larceny. Defendant, naturally enough,
perhaps, did not risk cross-examining the witness and thereby get-
ting a more definite statement of the time to which he referred.

VII. Error is charged in that the court did not define "messuage"
and "nighttime" as used in the instructions. The instruction sub-
mitting the case did not use the term "messuage" alone.
It required the jury to find that the chickens were stolen
"from the messuage of the said Trav Johnson *and* from
the premises upon which the dwelling house of the said Trav John-
son is situated." (Italics ours.) The jury having been directed thus
we think no further definition of "messuage" was necessary.

Nor do we think a definition of "nighttime" was necessary in this case. Defendant's proved admission was that he had taken the chickens Friday *night* between eight and ten o'clock. Obviously he meant night, not in the evening and before night fall. The evidence was not such as to require a definition of the term.

VIII. The contention that the court erred in refusing defendant's requested instruction on circumstantial evidence is not preserved in the motion for new trial and is not before us for review.

We have considered appellant's contention of error in respect to the identification of his chickens by Johnson at Nelson's store and his claim that improper cross-examination of his wife was permitted and we are satisfied that no error was committed in either respect.

We have examined the record and carefully considered appellant's numerous assignments of error and find no prejudicial error. We think appellant had a fair trial and that his guilt was clearly established.

The judgment of the circuit court is affirmed. *Westhues* and *Fitzsimmons, CC.,* concur.

PER ·CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All of the judges concur.