THE STATE v. ROBERT JOHNSON, Appellant.

Division Two, December 20, 1926.

1. **CONFESSION: Adjuration without Threats or Promises.** A confession to an officer is not inadmissible because of adjuration and urgent exhortation to tell the truth, if no improper influence was exerted and no threats of harm or promises of worldly advantage were made. The fact that defendant was under arrest and that the confession was made without a caution or warning that it might be used against him, if no threats or promises were made, and he was only urgently adjured to speak the truth, does not render the confession inadmissible.

2. ———: **Threat of Mob Violence.** Where the defendant, a negro, charged with ravishing a white woman, four days after the crime was committed, was arrested in the city, and taken by the marshal about midnight to a smaller city in the county, and there the marshal in his office said to defendant: "The sooner we get out of town the better it will suit me. I don't want anything to happen. I don't want any party. Come up and tell me

everything you know," there having been no talk or rumor of a lynching, it cannot be held that the confession was induced by fear of violence, although the marshal, after it was made, to forestall a possibility of mob violence, prudently turned defendant over to the sheriff. To render the confession inadmissible, it must appear that defendant was induced to make it under the influence of a fear of violence; and it does not appear from this evidence that the confession was induced by such fear.

3. CHARACTER WITNESS: Impeachment: Disconnected Crime. Where the defendant on cross-examination had testified that he had been convicted of larceny and burglary five years before his trial for a capital offense, it was unimportant that the court permitted the State to ask one of his character witnesses, who had testified that his general reputation for morality was good, if she knew that defendant had served a term in the penitentiary, the objection being that the question called for a statement of a specific and disconnected crime. Admitting that the question was improper, still, in view of defendant's testimony, it was harmless.

4. JURY: Misconduct: Leave to File Affidavits: Arbitrary Denial. Where the motion for a new trial charged that the jurors before they were called on their **voir dire** declared that if chosen they would hang defendant, and leave to file affidavits in support of the motion within eight days was given, the court did not act arbitrarily in refusing to extend the time five days more, where there was no showing of diligence, and counsel for defendant refused to disclose the names of the parties whose affidavits he intended to file.

5. INSTRUCTION: Rape: Criminal Intent. An instruction which embraces every element of the crime of rape as defined in the statute (Sec. 3247, R. S. 1919), even stressing force, want of consent, penetration and utmost resistance, is not erroneous as to defendant, even though it does not require the jury to find that the offense was committed with a criminal intent.

6. ———: ———: Omission of Element of Criminal Intent. An instruction need not require the jury to find that defendant's forcible ravishment of a married woman was committed with a criminal intent. The act itself is criminal and necessarily involves knowledge of its illegality, and no averment of knowledge or criminal intent is necessary other than is involved in a statement of the facts which the statute declares constitute the offense.

7. RAPE: Cruel Punishment: Death. Punishment at death of a defendant whom the evidence clearly shows to be guilty of rape upon a married woman, even assaulting her upon the head with an iron bar to accomplish his purpose, is within the statutory prescription, and the verdict will not be set aside on the theory that it is cruel and unusual, and of itself is evidence of passion and prejudice on the part of the jury.

Corpus Juris-Cyc. References: **Criminal Law**, 16 C. J., Section 1125, p. 582, n. 29, 31; Section 1468, p. 717, n. 39; Section 1473, p. 719, n. 54; Section 1476, p. 721, n. 83; Section 1482, p. 724, n. 22; Section 1496, p. 728, n. 97; Section 2368, p. 970, n. 54; Section 2422, p. 1004, n. 40; Section 2747, p. 1233, n. 7; Section 3195, p. 1357, n. 32; 17 C. J., Section 3665, p. 324, n. 68. **Evidence**, 22 C. J., Section 581, p. 483, n. 46, 47. **Rape**, 33 Cyc., p. 1415, n. 2; p. 1416, n. 8; p. 1501, n. 11; p. 1518, n. 2.

Appeal from St. Louis County Circuit Court.—*Hon. G. A. Wurdeman*, Judge.

AFFIRMED.

*Julian C. Hoester, Jr.* and *George F. Heege* for appellant.

(1) The alleged confession was erroneously admitted in evidence, for if the written confession was void because of duress or fear, then the verbal confession was void. State v. Hart, 237 S. W. 437; State v. Moore, 160 Mo. 443; State v. Ellis, 242 S. W. 952; Hector v. State, 2 Mo. 166. (2) The court erred in admitting testimony on behalf of the State elicited from defendant's character witnesses as to specific instances of defendant's reputation and the commission of specific offenses not charged in the information. State v. Hulbert, 228 S. W. 499; State v. Seay, 222 S. W. 429. (3) It was abusive discretion on the part of the court not to permit the defendant to file affidavits in support of his motion for a new trial, charging misconduct on the part of certain members of the jury who tried the case. (4) Instruction 1 was erroneous and should not have been given, because it does not properly define the offense as charged in the information, and because it does not require the jury to find that the offense, in order to have been committed, must have been done with criminal intent. State v. Gilreath, 267 S. W. 880. (5) The court erred in refusing to give the defendant's Instruction 1, as this instruction tended to negative the State's principal instruction and required the jury to find that the defendant struck the prosecuting witness and assaulted her with the intention of committing the offense charged. If the assault was committed with the intent to rob, then the defendant was not guilty. State v. Gilreath, 267 S. W. 880; State v. Cantrell, 234 S. W. 800; State v. Majors, 237 S. W. 486. (6) The verdict of death as assessed by the jury is a cruel and unusual punishment within the purview of the Constitution of Missouri and of the United States. It could be reduced by this court if the defendant is guilty and the case is otherwise free of error. State v. Allen, 174 Mo. 689. (7) The court erred in failing to instruct the jury on the offense of robbery, as the defendant testified the assault was committed with the intent to rob, and not to ravish. Sec. 4025, R. S. 1919; State v. Fredericks, 136 Mo. 51; State v. Anderson, 86 Mo. 309; State v. Parlow, 90 Mo. 608; State v. Hoag, 232 Mo. 308; State v. Banks, 73 Mo. 592;

*North T. Gentry*, Attorney-General, and *James A. Potter*, Assistant Attorney-General, for respondent.

(1) The testimony of the prosecuting witness was direct, positive, consistent and uncontradicted by any physical fact. Where there is any substantial testimony offered on the part of the State the case must be submitted to the jury. State v. Warner, 74 Mo. 83; State v. Pollard, 174 Mo. 607; State v. Hughes, 258 Mo. 272; State

v. Belknap, 221 S. W. 45; State v. Loness, 238 S. W. 113; State v. Jackson, 283 Mo. 24; State v. Hascall, 284 Mo. 616; State v. Cox, 263 S. W. 215; State v. Bowman, 278 Mo. 499; State v. Stackhouse, 242 Mo. 444. (2) The instructions given by the court and numbered one to six were in proper form and fully covered every necessary issue in the case. State v. Hutchens, 271 S. W. 525; State v. Mardino, 268 S. W. 48; State v. Davis, 268 S. W. 44; State v. Hayes, 262 S. W. 1034; State v. Hamilton, 263 S. W. 127; State v. Perry. 267 S. W. 828; State v. Woodard, 273 S. W. 1047. (3) The instruction offered by defendant was properly refused. The first part of the instruction requested by defendant was clearly erroneous. The intent to rape might have been formed at the time the assault with the iron pin was committed; or it might have been formed after the assault with the iron pin. The issue in the case was whether the defendant ravished the prosecuting witness and not when the intent to ravish was formed. Sec. 3247, R. S. 1919.

HIGBEE, C.—The defendant was found guilty in the Circuit Court of St. Louis County of the crime of rape and his punishment assessed at death, from which he has appealed.

The evidence for the State shows that Frank Faenger and his wife, Mabel Faenger, and their six-year-old daughter, lived in a small house near the village of Afton in St. Louis County. This house is in a field and stands back from the public highway. On the morning of Tuesday, March 9, 1926, defendant, a negro aged twenty-six, left his home in St. Louis and went out in the vicinity of Afton. Walking on the track of the Frisco Railroad he picked up a coupling pin. He came to the Faenger house about 10:30 A. M. Mrs. Faenger was alone, her husband being at work in St. Louis and the little girl at school. Johnson knocked at the kitchen door and asked for something to eat. Mrs. Faenger said she would get him something, closed the door and presently returned, opened the door and offered him egg sandwiches and a cup of coffee. Johnson said· "I don't want anything to eat; I want you," and struck her several blows on the head with the coupling pin. She fell on the floor; defendant tore off her bloomers, and ravished her, she all the time screaming, fighting and resisting to the limit of her strength. The proof of penetration is clear. Johnson then struck her with his fist on her right eye and went into the bedroom looking for money and jewelry. Mrs. Faenger testified that she was conscious all the time and that she ran from the house screaming into the field. Mr. Horst and his two sons, who were working some 400 or 500 feet away, heard her screams and saw her running and staggering. They ran to her; blood was running from her head; she was weak and nervous and complained of the negro's assault. They took her to Mr. Horst's

home. Dr. Wagenbach came and found her bleeding profusely from cuts on the head, which were to the skull, and sent her to the Lutheran Hospital. An X-ray picture showed several fractures of the skull. There was no internal hemorrhage, and the fractures did not render her unconscious at any time. Dr. Wagenbach examined Mrs. Faenger's private parts the next day to see if she had contracted a venereal disease, but because she was a mother no bruises or lacerations of her private parts had resulted from the sexual act.

On the afternoon of March 9th, the day the crime was committed, Andrew McDonald, chief of police of Webster Groves, and several others, went to Faenger's house. They found the coupling pin a few feet from the kitchen door with blood and hair adhering; they found two pools of blood, each about one foot in diameter, on the kitchen floor; they also saw the fragments of a broken coffee cup and an egg on the kitchen floor, and the drawers of a dresser in the bedroom had been pulled out and the contents tumbled about.

Chief McDonald got a description of the defendant and notified policemen in St. Louis and the defendant was arrested on Saturday, March 13th. He was turned over to McDonald and Lenz, another officer. They took him to Webster Groves, arriving there about midnight.

The defendant had a preliminary hearing on March 25th, and on April 5th an information was filed in the Circuit Court of St. Louis County, charging him with having carnally known and ravished Mabel Faenger at said county on March 9, 1926. On the same day the defendant was arraigned and pleaded not guilty. The case went to trial before a jury on April 26th, and on the following day the jury returned a verdict finding the defendant guilty of rape as charged in the information, and assessing his punishment at death. Motion for new trial was filed and overruled, and on May 14th, the court pronounced sentence that the defendant be hanged on June 23, 1926. The court appointed Julian C. Hoester, Jr., and George F. Heege, members of the bar, to conduct the defense. The record shows they did not fail in the discharge of the duties imposed on them by the court. They have filed a typewritten brief and argument and argued the case orally on appeal at our bar. They assign numerous errors, which we will consider so far as may be necessary.

Error is assigned in admitting the defendant's oral confession to officers McDonald and Lenz; that it was induced by fear of mob violence and defendant was promised that, if he confessed, it would go easier with him.

The court, in the absence of the jury, heard Chief McDonald's testimony as to oral statements made by the defendant and a written confession. The court ruled that the oral statements would be admitted, but the written confession would not. On the return of

the jury the testimony as to the oral statements was substantially repeated.

Chief McDonald testified in substance: On returning to Webster Groves with Johnson, the defendant, about midnight on March 13th, Officer Lenz and I took him to my office. Before we started interrogating the defendant I said: "Come on Johnson, the sooner we get started, the sooner we will get out of town, the better it will suit me. I don't want anything to happen, I don't want any party; come up and tell me everything you know." A party means a mob. He said he went across the Laclede Station road to a little house setting back in a field on the west side of the road, knocked on the door, and a lady came and he asked for work and for something to eat; he waited at the door and she brought two egg sandwiches and a cup of coffee, and when she came to the door he hit her on the head with this pin, and said: It's not something to eat; I want you; that she fell back and he started into the other room looking for jewelry. I said: Did you rape this woman? and he said no. I said, Johnson, I want you to tell me the truth. If you did not rape this woman don't say you did. I said, Johnson, if I was in your place, I would not say that I raped this woman if I did not, if they would kill me. If you raped this woman she knows it; if you raped this woman the doctor that examined her knows it, and if this woman tells me that you raped her I will know it, and I said; Johnson, if you did rape her you know it and you cannot lie and get by with it; you can't make a court believe it and can (?) make twelve men in the United States believe it if it is a lie; now you know yourself if you did it, and I want you to tell me the truth. He said, Yes, sir, I raped her. I said, Johnson, I don't want you to say that if you did not do it, because we are not trying to get you to admit anything you did not do, but tell the truth, and he said, I raped her; when she fell back in the room, I went in there. I pulled up her clothes, I raped her. As I wanted to get off she wanted to get up. I hit her on the head with the iron pin again, and told her to lay there, and asked her if she had any money or jewelry, and she said no, and she was screaming. And he said he went into the other room and pulled out the dresser drawers, and she jumped up and run out of the door south, and I ran north from the field and caught a Manchester car line and went home.

Cross-examination: I don't know if there was much discussion in the neighborhood about this affair. This offense was on Tuesday, March 9th, and it was Saturday night, the 13th, we talked with defendant. There was a good deal of feeling in the neighborhood towards Afton, but not much talk around Webster Groves. I didn't hear anything at Afton about a lynching party. I talked with five or six that were standing there. I got a description of the case, but

it wasn't anything they were going to do with him. I was not much worried about him being taken away from me, but I didn't want any commotion around there.

A motion to strike out the testimony of the witness as to the oral confession was overruled. Officer Lenz corroborated the evidence of Chief McDonald.

It is well settled that a confession will not be excluded because of a mere exhortation or adjuration to speak the truth. [16 C. J. 721, sec. 1476.] A confession to be inadmissible must be made to an officer of the law in consequence of improper influence exerted by him, and if no threats of harm or promises of worldly advantage be made by such officer, the confession is admissible. The fact that defendant was under arrest when he made the confession does not render it inadmissible; nor does mere adjuration to speak the truth, no threats or promises being made. [State v. Brooks, 220 Mo. 74 (syl. 1 and 2), 119 S. W. 353.] The fact that a voluntary confession was made without accused being cautioned or warned that it might be used against him does not affect its admissibility. [16 C. J. 723, sec. 1482; State v. Barrington, 198 Mo. 27, 95 S. W. 235.] According to the evidence for the State, there were no threats or promises made by the officers to induce the oral confession.

Chief McDonald took defendant from St. Louis to Webster Groves about midnight on March 13th. It does not appear that the defendant's presence in Webster Groves was known. This was the fourth day after the defendant, a negro, had ravished Mrs. Faenger, a white woman. While there had in fact been no talk or rumor of lynching the defendant, McDonald knew that the prudent course to pursue under the circumstances was to turn his prisoner over to the sheriff at Clayton and forestall the possibility of mob violence. With this thought and purpose in mind he took the defendant at the same hour of the night to his office and said to him: "The sooner we get out of town the better it will suit me. I don't want anything to happen. I don't want any party; come up and tell me everything you know." It is contended that the confession was induced by threat of mob violence and was inadmissible.

If there had been rumors or threats of mob violence, to render the confession inadmisible it must appear from the evidence that the defendant was induced to make the confession under the influence of the fear of violence. It does not appear from the evidence for the State that the confession was induced by such fear.

In State v. Anderson, 96 Mo. 249, 9 S. W. 636, Judge BLACK said: "Now it does not appear that Sales and Price, the guards, used any threats or words of intimidation. Doubtless there was considerable excitement in the community, but there is no certain evidence that any number of persons had combined to do the defendant harm.

Rumor, speculation and conjecture of a few persons are the only evidence of the existence of a mob. But be all this as it may, to exclude these confessions it should appear that the defendant made them under the influence of fear, and that is not disclosed or shown. The evidence of Price, Sales and the prosecuting attorney is that the statements were made by defendant of his own volition, and that being so, it matters not how much excitement prevailed in the community. These confessions were properly received in evidence. Though this be true, it was for the jury to say what weight they would give to them. And in this connection we may add that, aside from the confessions, there are many circumstances pointing to the guilt of the defendant and Saunders—circumstances which would require the court to submit the cause to the jury.''

See also State v. Armstrong, 167 Mo. 267, 66 S. W. 961.

The oral confession was properly admitted under an appropriate instruction, as will appear later in this opinion.

Mrs. Deacon testified on behalf of the defendant that his general reputation for morality was good. On cross-examination she was asked if she ever knew of the defendant's serving a term in the penitentiary. This was objected to because it was a statement of a specific and isolated instance, and not competent. The objection was overruled. The witness answered in the negative; she said she only knew he had been in the penitentiary from the newspapers. The defendant on cross-examination had testified he had been convicted of burglary and larceny in St. Louis County about five years before, hence the evidence sought to be elicited was unimportant.

In State v. Crow, 107 Mo. 347, 17 S. W. 745, this court said: ''Reputation, itself, can only be known from hearsay information and the courts give great latitude in cross-examination upon this question. 'The real purpose (says Judge COOLEY in Annis v. People, 13 Mich. 511) of this cross-examination is to enable the court and jury to determine whether the impeaching witness in fact knows the general reputation of the other, and if so, whether he testifies truly in regard to it.' [1 Greenl. Ev., sec. 461; State v. Miller, 71 Mo. 90; State v. Beal, 68 Ind. 345.]'' [See also State v. Parker, 172 Mo. 206, 72 S. W. 650; State v. Seay, 222 S. W. 427 (4); 22 C. J. 483, sec. 581; Kelley's Crim. Law, sec. 382.]

In State v. Hulbert, 228 S. W. 501 (3), Judge DAVID E. BLAIR said: ''Complaint is made of the action of the trial court in permitting the State to inquire of the witness Edna Luther, a character witness offered by defendant, whether she had been informed that defendant had assaulted and held up one Phillip Bogart. She was not asked as to rumors afloat concerning this alleged assault, which would have had a tendency to affect the good reputation of defendant for peace and quiet. The general rule is that inquiry of character wit-

nesses as to separate disconnected criminal acts of a defendant on trial is improper.''

The witness might have been asked if she had heard any report about the defendant having been in the penitentiary, but since the defendant testified he had been convicted of burglary and larceny the error, if any, is unimportant and harmless.

One paragraph of the motion for new trial alleges that certain members of the jury were guilty of misconduct and before they were called on their *voir dire* declared that if they were chosen to sit as jurors in the case they would hang defendant. The motion was filed on May 1, 1926, and leave was given until May 8th to file affidavits in support of the motion. Counsel complain that the court arbitrarily refused to extend this time in which to file affidavits for five days. The bill of exceptions recites that on May 8th, counsel asked time until May 12th to prepare and file the affidavits. The court asked counsel to give the names of the parties whose affidavits they intended to file. Mr. Heege: I don't believe it would be fair to the defendant to disclose at this time the names of the parties who shall make these affidavits, and with all due respect the defendant declines to disclose the names. The court refused to extend the time in which to file affidavits. No showing was made of diligence on the part of counsel to procure the affidavits within the time given for that purpose, nor was any showing made that affidavits could have been obtained if further leave had been given. The court in the exercise of its discretion had given leave to file the affidavits and there is no showing of an abuse of its discretion in declining to extend the time.

The court gave six instructions for the State:

''1.   The court instructs the jury as follows:

''The defendant is charged in the information with rape, and the jury will find him either guilty of rape as charged in the information, or find him not guilty, as you may believe and find from the evidence, under these instructions.

''If you find the defendant not guilty, you will simply so state in your verdict.

''If you find the defendant guilty, you will state in your verdict that you find the defendant guilty of rape, as charged in the information, and will assess his punishment at death or imprisonment in the state penitentiary for a term of not less than two years.

''If you believe and find from the evidence that the defendant, at the County of St. Louis and State of Missouri, on or about the 9th day of March, 1926, did feloniously and forcibly and against the will of the prosecuting witness, Mabel Faenger, make an assault upon her, and feloniously and forcibly and against her will, did

ravish and carnally know her, then you will find the defendant guilty of rape as charged in the information.

" 'Feloniously' as used in the information and these instructions, means wickedly, and against the admonitions of the law, and refers to the character of the punishment prescribed by law.

"Before you can find the defendant guilty of rape, you must believe and find from the evidence that the defendant forcibly assaulted and had sexual intercourse with the said Mabel Faenger at the time and place mentioned in the preceding instruction, against her will.

"You cannot find that there was such sexual intercourse unless you believe from the evidence that the defendant penetrated the private parts of the body of the said Mabel Faenger with his private parts to some extent. And you cannot find that such intercourse was forcible or against the will of the said Mabel Faenger, or without her consent, unless you find that she made the utmost resistance of which she was capable to prevent it; and whether or not such consent was given, should be determined from all the facts and circumstances which you consider proved by the evidence."

Number 2 is the usual instruction on the presumption of innocence, reasonable doubt and burden of proof.

"3. If you believe and find from the evidence that the defendant made any voluntary statement or statements in relation to the offense charged in the information after such offense is alleged to have been committed, you must consider such statement or statements altogether, and in the light of the circumstances under which you may believe they were made.

"The defendant is entitled to what he said for himself, if true, and the State is entitled to the benefit of anything he may have said against himself in any statement or statements proved by the State. What the defendant said against himself, if anything, the law presumes to be true, unless negatived by some other evidence in the cause, because said against himself. What the defendant said for himself the jury are not bound to believe, because it was said in a statement or statements proved by the State; but the jury may believe or disbelieve it as it is shown to be true or false by the evidence in this cause; it is for the jury to consider, under all the facts and circumstances in evidence, how much of the whole statement or statements of the defendant proved by the State, the jury, from the evidence in this case, deem worthy of belief.

"A confession, in order to be admissible or to be considered, must be made voluntarily, that is, without anybody holding out any hope of reward or leniency, or fear of punishment for not doing it. If that is done, it is competent for the jury to consider it and give it such weight as they see fit. You have a right to consider all the circumstances surrounding the party at the time the confession is

made, and give to it such weight as you think proper under all the circumstances.''

Number 4 is the usual instruction on character. Number 5 is as to the weight and credibility of the evidence. Number 6, that all twelve jurors must concur in a verdict.

The defendant asked an instruction that intent is of the essence of the offense charged, and if the jury believe the defendant assaulted the prosecuting witness by striking her with an iron bar and they are not satisfied beyond a reasonable doubt that when he so assaulted her he intended to have sexual intercourse with her and made such assault for that purpose and intent, they should acquit him.

It is insisted that the first instruction is erroneous because it does not define the offense; that it covers the whole case and should have included all the elements; that it does not require the jury to find that the offense was committed with a criminal intent.

This instruction clearly defines the crime of rape; it embraces every element of the crime as defined in Section 3247, Revised Statutes 1919. Force, want of consent, penetration and the utmost resistance are stressed in this instruction. When ''the act itself is criminal and necessarily involves a knowledge of its illegality, no averment of knowledge or bad intent is necessary other than is involved in a statement of the facts of the offense.'' [Kelley's Crim. Law, sec. 199.]

The appellant challenges Instruction 3. It has been so often approved that Judge Railey declined to review the cases in State v. Hutchens, 271 S. W. 530 (11).

There was no error in the refusal of the defendant's instructions; the first on the question of intent was erroneous as we have seen; the other, so far as proper, was covered by the instruction on reasonable doubt.

The demurrer to the evidence was properly refused; the evidence leaves no room for reasonable doubt of the defendant's guilt. The information is not challenged; it clearly charges the crime of rape. On account of the gravity of the case we have examined the record with much care and find no prejudicial error. There were no errors in the admission or exclusion of evidence. Counsel insist that the punishment assessed is cruel and unusual and is evidence of prejudice and passion on the part of the jury. It is within the punishment prescribed by the Legislature, whose constitutional function is to write the laws for the people of the State and to provide penalties for their violation.

The judgment is affirmed. *Railey, C.,* not sitting.

PER CURIAM:—The foregoing opinion by Higbee, C., is adopted as the opinion of the court. All of the judges concur.