**STATE of Missouri, Respondent,**

v.

**Gertrude Blacketer KECK, Appellant.**

**No. 50784.**

Supreme Court of Missouri.

Division No. 2.

May 10, 1965.

Norman H. Anderson, Atty. Gen., Jefferson City, Henry S. Stolar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Emmett L. Bartram, Maryville, for appellant.

PRITCHARD, Commissioner.

Defendant was found guilty by a jury of the crime of stealing hogs. Her punishment was assessed at one year in the county jail "subject to parole or probation at six months for good behavior." We have appellate jurisdiction because the crime charged of stealing hogs, regardless of their value, is a felony under § 560.161 subd. 2 (3), RSMo 1959, V.A.M.S.Const.Mo.1945, Art. V, § 3, V.A.M.S.

Defendant questions the submissibility of the state's case. No motion for judgment of acquittal was made by defend-

ant at the close of all of the evidence. Even so, we look to the record to ascertain if there was any substantial evidence to support the verdict. State v. Burnett, 365 Mo. 1060, 293 S.W.2d 335, 339 [3]. In so doing, we consider the evidence and favorable inferences reasonably drawn therefrom in the light most favorable to the state, and disregard all evidence and inferences to the contrary. State v. Watson, Mo., 350 S.W.2d 763, 766 [1].

The facts are these: On July 6, 1962, Bill Coston owned some hogs located two miles east and two miles north of Skidmore, in Nodaway County, Missouri. On that day he learned that two hogs were missing—"Hamp" gilts, with V-notches in the top of their left ears, with bobbed tails, and weighing 185 to 200 pounds. A hole was cut out in the fence of the lot where the hogs were kept. Bill later saw one of the hogs at "Skeeter" Brown's sale barn in Bedford, Iowa, and positively identified it. He gave no one permission to take the hogs.

The hogs on Bill's farm were fed and cared for by his father, Frank Coston. Frank counted them every time that he fed them, and discovered the missing hogs about five o'clock on the morning of July 6 or 7. He later saw one of the missing hogs at "Skeeter" Brown's sale barn, and found another three or four miles east of Bedford, Iowa. Frank identified the hogs as the property of his son, Bill.

Rex Freeze was with defendant, her husband, Sterling, and with two of her children on July 5, 1962, in College Springs, Iowa. The group went on that day to defendant's home at Ellwood, Kansas. Defendant and her husband told Freeze that they were a little hard up and they discussed going after some hogs. Defendant stated that she knew that some hogs could be gotten at the Coston farm. That night they went to the Coston farm but did not take any hogs. The following night, they returned to the farm in Freeze's car, the back seat of which had been removed. Upon arrival, feed was scattered in the lot and the hogs were caught with a rope. Defendant and Freeze cut a hole in the lot fence with wire cutters which had been purchased by defendant's husband, and the hogs were removed through the hole, driven to a ditch beside the car and loaded therein. They then drove to New Market where they were unable to sell the hogs, so they were placed in a pen. At that time defendant was sitting in the car. A pickup truck was then hired from Tony Pace, and the hogs were hauled to "Skeeter" Brown's sale barn at Bedford, Iowa, where they were sold for $59.90, Freeze doing the negotiating with Brown. Defendant, her husband and Freeze left Bedford and came to Maryville, Missouri, where Freeze cashed the check and gave defendant and her husband half of it.

Deputy Sheriff Carl O. Mackey of Holt County was permitted to testify, over objection, that defendant made an oral statement to him about the crime. The ground of the objection was that defendant was not advised by Mackey that any remarks she made could be used against her. The statement was made on April 13, 1963, in the Sheriff's office in Holt County where defendant was on another charge of petty stealing, about which Mackey was going to question defendant. He suggested to her that she tell him if she stole anything else, but he did not know anything about the Coston theft at that time. He did not advise her that what she said could be used against her. Thereupon, defendant related to Mackey, spontaneously, unsolicited and voluntarily, that on July 6, 1962, her husband and Freeze told her they were going to steal some hogs and that she was to do the driving. Her clothesline was taken to tie the hogs, and she drove the car to Nodaway County, parked at the foot of a hill and kept the motor running. Her husband and Freeze got out, told her to keep the door open and motor running, and returned 10 or 15 minutes later each carrying a hog, which hogs were put in the back seat. They drove to a stockyards where

they were unable to sell the hogs, so they hired an old gentleman and his grandson to take the hogs to Bedford, Iowa. Freeze sold the hogs there for $67.00, after which they went to Maryville and cashed the check.

■ Under the above evidence, the state made a submissible case upon defendant's participation in the hog theft. This point (No. 7) is ruled against defendant.

■ With respect to the admissibility of defendant's statement to Deputy Sheriff Mackey, the evidence is further that defendant told him in the Magistrate Court of Holt County that she wanted to clear up everything. "She wanted to get right." "She wanted to take care of her family." Mackey then told her, "Let's go up to the office and you can tell me about it." Upon arrival at the office, defendant started to tell him about the hog stealing. He put no questions to her. Under these circumstances the statement was not inadmissible. Defendant was not coerced; she was not promised anything; there was no physical abuse, or a long interrogation or a holding of her incommunicado by the Sheriff. The mere fact that defendant was not advised that her statement could be used against her does not render the same inadmissible. State v. Laspy, Mo., 323 S.W.2d 713, 716 [3, 4]; State v. McCulley, Mo., 327 S.W.2d 127, 130 [1]; State v. Thost, Mo., 328 S.W.2d 36, 39 [6, 7]; and State v. Martin, Mo., 347 S.W.2d 680, 682 [4], where it was held that the mere fact of being in custody and not being advised that any admission made could be used against the defendant did not establish that his admission or confession was involuntary as a matter of law. For all that appears here, defendant's statement to Mackey was freely and voluntarily given, of a spontaneous nature, and defendant's point raising the issue of its admissibility is overruled.

Point 1(b), "Self-serving statements, accusations against accused husband were properly (sic) excluded as hearsay and immaterial," and Point 2, "Supreme Court must search record proper for error, regardless of whether such questions are raised on appeal or were raised on motion for new trial," present nothing for review. Civil Rule 83.05, V.A.M.R. So also with Point 4, "Extra judicial admissions are not admissible," and Point 5, "Admission or confession induced by some influence like a hope of clemency, is inadvisable." Under said rule, applicable in criminal cases under Rules of Criminal Procedure, § 28.18, points relied upon "shall briefly and concisely state what actions or rulings of the Court are claimed to be erroneous and briefly and concisely state why it is contended the Court was wrong in any action or ruling sought to be reviewed. *Setting out only abstract statements of law without showing how they are related to any action or ruling of the Court is not a compliance with this rule.*" (Emphasis added.)

By Point 3, defendant claims she "should have been permitted to show, and tell, how her husband told the jury, in his case, that he told them, her sister, Mrs. Freeze, was the woman who went with the men and got the hogs, and she also testified in the husband's case." We have searched the transcript on appeal, and we find no testimony relating to this point, so obviously it must be overruled.

■ Other points erroneously numbered 4, 5 and 6, relate to credibility of witnesses: That there was no evidence to sustain the state's charge except that of two ex-convicts; that practically all of the state's witnesses were proven false; and that the creditable evidence by a little 12-year old girl (defendant's daughter) and a woman (in defendant's home) was all adverse to the testimony of the state's convict witnesses. The credibility of the testimony of state's witnesses Freeze and Mackey was for the jury, and we may not interfere with the jury's determination of the facts based upon such testimony. State v. Jones, Mo.,

358 S.W.2d 782, 784 [4]; State v. Tompkins, Mo., 277 S.W.2d 587, 590 [1]. Said points are overruled.

We have ruled the submissibility of the state's case, raised under what has been denominated defendant's Point 7. Under this point, defendant says also that she proved her alibi that she was at home that night and was not with the ones who committed the crime, but no instruction was given the jury on "alibi." The evidence of defendant does tend to prove an alibi, and the court did not instruct thereon. The defendant, however, neither requested nor offered an instruction upon the defense of alibi, and in the absence of such a request or offer, we will not convict the trial court of error. State v. Westfall, Mo., 367 S.W. 2d 593, 595 [5–7]; State v. Harris, Mo., 356 S.W.2d 889, 891 [3–5].

We have examined the matters set forth in Rules of Criminal Procedure, §§ 28.02 and 28.08, V.A.M.R., required to be reviewed, and we find no error. The information is sufficient; the verdict is in proper form (the phrase, "subject to parole or probation at six months for good behavior," is to be treated as a recommendation for clemency or leniency and is to be otherwise disregarded, State v. Churchill, Mo., 299 S.W.2d 475, 479 [14, 15]); judgment was entered after allocution was granted, and the sentence was within the permissible limits. Defendant was present in person and by counsel from arraignment to judgment and sentencing.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.