**STATE of Missouri, Respondent,**

v.

**Gilbert OWEN, Appellant.**

**No. 54730.**

Supreme Court of Missouri,
Division No. 2.

July 13, 1970.

Rehearing Denied Sept. 14, 1970.

---

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

Michael Baker, Martin, Baker & Campbell, Springfield, for defendant-appellant.

PRITCHARD, Commissioner.

Appellant was convicted by the verdict of a jury and sentenced to fifty days imprisonment for the commission of the crime of exhibiting a dangerous and deadly weapon in a rude and threatening manner. § 564.610 RSMo 1959, V.A.M.S.

The first question for consideration is whether appellant's motion for new trial was timely filed so as to permit this court to review the assignments of error therein contained and presented in his brief. The jury returned its verdict on April 18, 1969. Upon request of counsel for appellant he was on that date granted fifteen days within which to file a motion for new trial. That time would have expired on May 3, 1969. The motion was filed on May 7, 1969, on which date the court entered the following minutes: "Defendant's counsel by agreement of the Prosecuting Attorney and with leave of court is granted leave to on this date file his Motion for New Trial. Defendant and his counsel personally appear. Motion for New Trial argued. Motion taken under advisement until Tuesday, May 13. Defendant instructed to re-appear on that date together with his counsel." On May 13, 1969, the motion for new trial was overruled and notice of appeal was filed the following day.

Supreme Court Rule 27.20(a), V.A.M.R., provides that a motion for new trial shall be filed before judgment and within ten days after return of the verdict: "Provided, on application of defendant, the court may extend the time for filing such motion for an additional period of thirty (30) days: *Provided further, the court shall have no power to make another or further extension of the time for filing said motion.*" The here italicized portion brings into focus the question of whether the trial court, having made one order granting an additional five days, may extend the time for the filing of the motion beyond the time first specified, but still within the total additional time of thirty days allowed by the rule.

There are a number of cases holding that the trial court may not make "another or further extension of the time for filing" a motion for new trial in criminal cases. All of such cases refer to facts of an extension of time beyond the maximum of forty days specified in the rule. Representative are: State v. Powell, Mo., 433 S.W.2d 33, 34 (motion filed fifty days after verdict); State v. White, Mo., 403 S.W.2d 603 (motion filed thirteen days after April 29, 1965, the time which the court specified from date of verdict, March 31, 1965, there being no request for leave to further extend such time); State v. Miller, Mo., 368 S.W.2d 353, 360 (verdict received March 22; extension of time to May 1 granted on April 2, which would be eleven days after verdict; and amendments to the motion were made May 11, which would be forty-one days after verdict); State v. House, Mo., 349 S.W.2d 928, 929 (motion filed forty-seven days after verdict); State v. Ash, Mo., 286 S.W.2d 808. In State v. Cantrell, Mo., 403 S.W.2d 647, cited by the state, the verdict was returned June 29, 1965, and a motion for judgment of acquittal or for a new trial was filed July 13, 1965. There was an attempt outside the record to amend the record nunc pro tunc to supply an order extending the time, held to be a nullity under State v. Hooper, Mo., 364 S.W.2d 542, hence nothing was presented for re-

view. The state also cites State v. White, Mo., 439 S.W.2d 752, 753, where the motion was not filed within the time fixed by the trial court, and there was apparently no issue of a further extension being requested within the total time of forty days allowed by the rule. No case has been found squarely ruling the question here presented, but in State v. Johnson, 316 Mo. 86, 289 S.W. 847, 850, leave was granted to file affidavits in support of a timely filed motion for new trial and it was held not to be an abuse of discretion to refuse to grant a further extension of time for the filing of such affidavits. In State v. Ryan, Mo., 50 S.W.2d 999, it was held that the matter of extending the time to a defendant to file a motion for new trial is within the sound discretion of the court. It must be held in the circumstances of this case that the trial court had the authority under the rule to permit the filing of the motion for new trial after the date first specified but within the total time allowed by Rule 27.20(a), and that the language of the rule means only that a trial court has no power to make another or further extension of the time after the additional time of thirty days allowed by the rule has expired. The state's contention that nothing is preserved for review by the present motion filed by leave of court and agreement of the prosecuting attorney is thus ruled against it. There was a motion for judgment of acquittal made at the close of all the evidence, which motion was again made in particularity as a part of the motion for new trial as filed by leave of court.

On November 17, 1968, Bill Vanzandt, a native of Barry County, Missouri, but then a teacher at the University of Arkansas, went to his farm in the south central or southwest part of that county. His farm and those of his father and brother adjoined appellant's property. Bill Vanzandt was accompanied by his son, Mark, and Robert Robinson, who went south across Oscar Vanzandt's field quail hunting. Bill later joined them almost in front of Oscar's house, and the three

continued hunting to the west on property owned by two of Bill's uncles, then returned to Oscar's property. The dogs trailed the quail in a fence line between the properties of appellant and Oscar, and went generally toward appellant's house. Bill started to call the dogs when some shots were fired. He first thought the shots were going into the trees, but became aware that they were going on the ground near his son. The three then started moving away to the north from the area and the dogs rejoined them back on Oscar's property. They then saw appellant on his own property about 50 yards away with a rifle at the raised position. Bill told Mark to lie down, put his gun beside the boy, raised his hands and said to appellant, " 'You'd better let me talk to you,' " and appellant answered, " 'You better not take another step or I'll shoot you.' " Bill retreated to a point where there was a ridge between him and appellant and later came back to where his son was and the three returned to Oscar's house.

On cross-examination it was developed that Bill and his companions were standing on a round knoll in plain view of appellant's house when the shots were fired, probably a half dozen. Bill did not see appellant at that time. On redirect examination Bill testified that the shots came from a southeast direction and from appellant's house, and he saw appellant with his gun shortly thereafter.

Robert R. Robinson was standing about 10 feet from Mark and 25 to 50 feet away from Bill when the shots were fired. There were at least three shots fired close to Robert and Mark, one hitting a tree directly over Robert's head. No shots went into the ground to Robert's knowledge. They moved about a quarter of a mile to the north, and in fifteen or twenty minutes Robert noticed a man standing in the direction from which he had heard the shots, holding a gun, a rifle, in his hands at a shoulder-high position. After Bill put his gun down he took two or three steps toward appellant who said, " 'If you take any

more steps, I will shoot,' " after which Bill did approach appellant for about 50 yards, and apparently the two had a short talk.

Mark Vanzandt's version of the incident was substantially the same, but he added that at the time the shots were fired they were on appellant's land going to get the dogs.

Appellant's first point is that the court erred in overruling his objection to testimony concerning the shots being fired in the direction of state's witnesses. The reason assigned is that such testimony subjected appellant to being tried for a crime for which he was not charged. It is first asserted that the evidence of the other crime (the actual firing of shots) violated appellant's right to be tried for the offense charged (citing State v. Shilkett, 356 Mo. 1081, 204 S.W.2d 920) and such evidence was not properly related to the case on trial. Under State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, 307 (cited by appellant), the courts will rigidly scrutinize this class of evidence as to whether its tendency "is to raise a legally spurious presumption of guilt in the minds of the jurors," and whether the court can "clearly perceive the connection between the extraneous criminal transaction and the crime charged, that is, its logical relevancy." That case holds that if the court cannot do so, "the accused should be given the benefit of the doubt, and the evidence should be rejected."

■ The often-stated exceptions to the general exclusionary rule of evidence of other crimes are set forth in State v. Reese, supra, 274 S.W.2d 307: " 'Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; (5) the identity of the person charged with the commission of the crime on trial.' " Under the facts of this case the state's sugges-

tion that exceptions (2), (3) and (4) are applicable must be sustained. The prior shooting of the rifle shows an intent to employ that weapon in driving trespassers off appellant's land; it shows that the state's witnesses were under no misapprehension or mistake as to appellant's exhibiting to them the rifle carried in a raised position, and it shows that such exhibition was the result of no accident; and since appellant had shown that he did not want hunters on his land (he had run an advertisement of no hunting thereon), the shooting of the rifle demonstrates his plan to exclude such trespassers. Proof of the shooting of the rifle toward Bill Vanzandt and his companions, closely related in time (it was not remote as in some cases cited by appellant), tends to establish that he likewise exhibited a rifle in a rude and threatening manner. In State v. Childers, Mo., 313 S.W.2d 728, 733, the court said, " 'When a defendant in the course of the perpetration of one crime commits another, the state is not required to nicely sift and separate the evidence and exclude the testimony, tending to prove the crime for which he is not on trial, when it forms a part of the res gestae of the crime charged.' "

■ Appellant contends also that the evidence of the other crime is not admissible unless the proof thereof is clear. In argument he says that the state did not show that he fired the shots "nor was it clear where the shots came from." He says State v. Hyde, 234 Mo. 200, 136 S.W. 316 controls. That case held that evidence of other crimes committed by the accused does not have to be proved beyond a reasonable doubt to be admissible, but there should be substantial evidence of the other crime sufficient to submit to a jury (loc. cit. 136 S.W. 331 [22]). Although the evidence here is circumstantial, it does sufficiently establish that appellant fired the shots. Shortly, within fifteen or twenty minutes, after the rifle shots were fired, Robert Robinson saw appellant standing, holding a rifle, in the direction from which they had heard the shots. They were on

appellant's land, and no other person apparently was present. The legitimate inference for the jury to draw from the evidence was that it was appellant who fired the shots.

Appellant's second point is that the court erred in admitting into evidence a plat of appellant's farm and adjoining lands drawn by witness Bill Vanzandt. It is said that the plat was not authenticated, was inaccurate, and was not the best evidence. Bill admitted the inaccuracies of the plat (it was not drawn to scale), but testified that it did portray the general boundaries of the farms and fairly and reasonably represented the areas depicted. The plat aided the jury in understanding the relative positions of the Vanzandt farms and that of appellant with relevance to the testimony as to where the incident occurred. It was not inadmissible. Compare Martin v. Sloan, Mo., 377 S.W.2d 252, 263, and State ex rel. State Highway Commission v. DeLisle, Mo., 425 S.W.2d 938, 940.

The submissibility of the state's case is attacked by appellant's Point III. The jury could find that appellant had his rifle at the ready position, and announced to Bill Vanzandt not to come closer as he would shoot him. In State v. Ready, Mo., 251 S.W.2d 680, 682, a submissible case was held to have been made where the defendant pointed a gun at one Turner and said, " ' "Red [Weuthrick], get out of line, I want to take a crack at him." ' " In State v. Gibson, Mo., 300 S.W. 1106, defendant flourished a revolver and pointed it at one Le Baugh, then struck him with it, when the defendant was prevented from taking a car from a garage, held to sustain a conviction of exhibiting a deadly weapon in a rude and threatening manner. In State v. Martin et al., 52 Mo.App. 609, Martin and a constable in protecting a field of corn in the constable's possession under writs of replevin and attachment, appeared with cocked shotguns and demanded that Frazier and three persons desist from gathering the corn and take their departure, after

which Martin told them to get out " 'damn quick.' " The judgment of conviction of exhibiting a double-barrel shotgun in a rude, angry and threatening manner was sustained. See State v. Heffernan, 124 Mo. App. 329, 101 S.W. 618, where defendant got out a pistol and demanded that whiskey be furnished to him on credit, and also State v. Tompkins, Mo., 312 S.W.2d 91, in both of which convictions under the evidence were sustained. These cases illustrate what is necessary to sustain a conviction and are analogous to the facts here in that the evidence showed the threatening attitudes of the defendants. Although there was no evidence that appellant pointed his rifle at Bill Vanzandt or any person, he did have it at "the ready" position and this accompanied by his threat to shoot (and his previous shots with the rifle as the jury could infer he fired) shows his exhibition of the rifle in a rude and threatening attitude. The evidence was sufficient to sustain the conviction.

Complaint is made that the main instruction required the jury to find that the alleged rifle was a firearm, there being no evidence to that fact. All of the evidence was that appellant was carrying a rifle. Rifle shots had been fired toward the location of the Vanzandts and Robinson. The fair inference from the evidence is that the rifle was a firearm, capable of being fired. The point (IV.A.) is without merit.

The verdict of the jury was: "We, the jury, find the Defendant, Gilbert Owens, guilty of 'Exhibiting a deadly weapon in the presence of Bill Van *Sandt,* in a rude, angry or threatening manner and assess his punishment at 50 days guilty.' " Appellant claims this verdict is not responsive to the instruction of the court. He does not challenge its form. The instruction required the jury to find that appellant "did willfully, feloniously and unlawfully, in the presence of Bill Van *Sandt,* exhibit a deadly weapon, to wit, a rifle, in a rude, angry, and threatening manner, and that

said rifle was then and there a firearm * * *." The verdict includes the basic elements of the statute and of the instruction. Its meaning is clear. It finds no other offense than the exhibition of a deadly weapon in a rude, angry and threatening manner. The point (V) is obviously without merit and is overruled.

The judgment is affirmed.

BARRETT, C., not sitting.

STOCKARD, C., concurs.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

DONNELLY, P. J., MORGAN and FINCH, JJ., and KELLY, Special Judge, concur.